OLIVER BUS LINES *v.* SKAGGS.

(Division B. Nov. 11, 1935. Suggestion of Error Overruled Dec. 9, 1935.)

[164 So. 9. No. 31887.]

Wise & **Bridgforth**, of Yazoo City, and **James W. Wrape**, of Memphis, Tenn., for appellant.

204

Barbour & Henry, of Yazoo City, and Murphy & Wadlington, of Belzoni, for appellee.

Argued orally by **Louis J. Wise** and **James W. Wrape,** for appellant, and **J. F. Barbour,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Yazoo county against appellant to recover damages for injuries received by him while a passenger on one of appellant's busses, alleged to have been caused by the bus leaving the road and running into a ditch on the left-hand side, brought about through the alleged negligence of the driver of the bus. There was a verdict and judgment for appellee in the sum of five thousand dollars, from which judgment appellant prosecutes this appeal.

Appellee was going on sixty-seven years of age at the time of his injury. He testified that he was strong and hearty, and made his living by manual labor. He is a farmer in Humphries county and has been for a good many years. He had a wife and three sons at home and married children away. He was in Missouri, near Sikeston, on a temporary job, manual labor, and had finished

the work. On January 3, 1935, he made the trip from Sikeston to Silver City, in Humphries county, on one of appellant's passenger busses. He lived only about four miles from Silver City. There were something like twelve or fifteen passengers on the bus. As the bus was approaching Silver City at about nine o'clock at night, going south and about half a mile north of that place, it ran into a ditch on the left-hand side of the road and struck a wire fence and a post to which the wire was attached; both the front and back left-hand wheels of the bus were in the ditch. The road is a first class gravel road thirty feet wide with gravel shoulders.

There is a radical conflict between much of the material evidence for appellant and appellee as to whether the ditching of the bus was caused by the negligence of the driver. It is shown by the evidence, however, without conflict that it resulted from an effort on the part of the driver to avoid striking the car of Mr. North, which was on the right-hand side of the road. North and his companion on the trip were driving south in the former's car; they found a car ditched on the right hand side of the road; they passed it for a short distance, then decided to back up to it with their car and pull it out of the ditch; they were so engaged when the bus appeared on the scene. This place in the road is situated in an S curve; some of the witnesses testified that it was a sharp S curve, and some that it was a gradual S curve. When the bus swerved to the left, North's car had about reached the ditched car. According to the testimony for appellee, the lights on North's car, both front and rear, were burning brightly. According to the evidence for appellant, the front lights were burning, but the rear light was not. The evidence for appellee, if true, showed the speed of the bus when it appeared on the scene to have been from forty-five to fifty miles an hour; that for appellant placed it at from twenty to thirty miles an hour.

North appears to have been in a better position to observe both the speed of the bus and just how and what

caused it to swerve to the left and go in the ditch. He testified that the bus was going at from forty-five to fifty miles an hour when it swerved to the left to avoid hitting his car; that the driver of the bus, with proper care, could have seen both the rear and front lights of his car in ample time to have avoided the swerve to the left; that from his car to where the bus went in the ditch was about thirty-five yards, and that after the left-hand wheels of the bus went in the ditch it ran from thirty-five to forty yards before it struck the fence and stopped; that his car was on the extreme right-hand side of the road close to the ditched car. If that was true, it is apparent at once that there were twenty odd feet of clear road left for the bus to pass over, and therefore a sharp swerve to the left was wholly unnecessary. The evidence for appellant was to the effect that the curve was so sharp that the driver of the bus, after he was able to see North's car, could not avoid hitting it without making a sharp turn to the left. One or more of the witnesses for appellant testified that North's car was about the middle of the road "zigzagging" back to the ditched car.

Now as to appellee's injuries: He testified that he was sitting immediately behind the driver of the bus; that between them was a rocking chair lying down, probably some passenger's baggage; that when the bus ditched, the lights either went out or were turned out by the driver, and he was thrown either against the rocking chair or some other object and struck just above the right hip and lower down on the right side; that he felt a little pain at the time, but did not consider it serious. His baggage was a small light handbag with only two garments in it and a Missouri ham that weighed thirty-two pounds. He got out of the bus and took these out with him, and he and a negro passenger proceeded to a nearby filling station, which was also the bus station. Appellee testified further that the negro carried the ham for him, and he carried the handbag; that he left both the ham and the bag at the bus station and walked home that night, a

distance of about four miles; that he suffered on the way home and on that account it was almost daylight when he arrived. Appellee admits that when he got off the bus he made no complaint to any one about being injured, because he did not consider his injuries serious. He testified, however, that the next day the results of the injuries began to show up and progressed rapidly for several days. It appears from the evidence that the injuries were to his right kidney and testicles. On the 11th of January (the injuries occurred on the 3d), appellee consulted Dr. Robert Jackson of Belzoni. Dr. J. W. Jackson and Dr. Robert Jackson occupied adjoining offices in Belzoni, and were friends. When the trial came on, Dr. Robert Jackson had moved to Tennessee and did not testify. The other Dr. Jackson did; he was present on the 11th of January when Dr. Robert Jackson examined appellee. After Dr. Robert Jackson moved to Tennessee, appellee was examined and treated by Dr. J. W. Jackson several times; the last time only a few days before the trial, which took place in April, 1935.

The evidence of Dr. Jackson and appellant, taken together, show substantially these facts: That appellee's right kidney was injured; that he urinated frequently both day and night, that his urine was pretty heavily loaded with albumin, and that this condition probably resulted from the injury; that his testicles, especially one, was badly swollen, several times larger than normal, and the scrotum was "purplish;" that appellee's pulse was too rapid, and his blood pressure above normal; that he had great difficulty in sleeping and was restless, and on account of the enlargement of his testicles it was with great difficulty that he walked or even sat down. Dr. Jackson testified that appellee's injuries were probably permanent. Appellee testified that he was wholly disabled for any kind of labor whatever.

Section 5569, Code of 1930, makes it unlawful to operate an automobile in the country at a greater rate of speed than forty miles an hour, and section 5571 provides that

on approaching a sharp curve the driver shall have the machine under control, and section 5588 provides that in any action for damages to persons or property, caused by operating motor cars in violation of any of the provisions of the chapter on motor vehicles, the plaintiff shall be deemed to have made out a prima facie case by showing the fact of the injury and at the time of the injury such violation. As above stated, the evidence for appellee showed a violation of the speed statute and the sharp curve statute, and in addition that the driver of the bus did not keep a proper lookout ahead. The jury believed appellee's evidence. We cannot say that it was not justified in so doing. Taking appellee's evidence as true, we think under the law it made a case of liability. A directed verdict, which was requested by appellant, therefore, would have been out of place.

Appellant assigns and argues that the verdict is too large; so large that it evinces passion and prejudice on the part of the jury. There is often great difficulty for an appellate court to determine this question. Ordinarily a fair-minded jury is more competent than any judge to fix the amount of damages; however, when the amount awarded is so large that it is shocking to the enlightened conscience it is the duty of the court to set it aside and award a new trial on that ground alone. We cannot say that this is true of the verdict in this case. Probably the amount would be too large if appellee's only injury was loss of earning capacity, but that is not all; according to his and Dr. Jackson's testimony, his suffering has been great and will probably continue permanently.

Appellant asked and the court refused an instruction to the effect that if the evidence showed that the backing of North's car up the road in front of the bus was the independent, intervening cause of the ditching of the bus, then the verdict should be for appellant. There was another instruction refused by the court, in which appellant sought to have the jury informed that the backing of the car by North was in fact the independent,

intervening cause of the accident. The refusal of these two instructions is assigned and argued at length as error. If these instructions had been given it would have meant that, regardless of the negligence of the bus driver, there was no liability on the part of appellant, because the bus swerved in order to avoid striking North's car. That is not the law. Public Service Corporation v. Watts, 168 Miss. 235, 150 So. 192, 194; Russell v. Williams, 168 Miss. 181, 150 So. 528, 151 So. 372. In both of those cases the court undertook to define what constituted an independent, intervening cause. In the Russell case the court said that the rule is that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original causes and the injury. In the Watts case the court used this language: "For the same purpose, we shall attempt to state that principle as follows: If the force which causes the injury is put in operation or motion by what is the negligence of the defendant, and that force or motion is still in progress or operation and has not lost its identity and continuity, as such, when the injury occurs, then the negligence which puts the injurious force in operation is the proximate cause. But when a new and independent force intervenes between the negligence of the defendant and the injury and that new and independent force or power or agency is then and there of sufficient strength or operative force to overcome and substantially supersede the original force or motion, that is to say, if the new and independent force or power is actually an efficient force or power, then the new force becomes the proximate cause, and the original cause, having been superseded, becomes the remote cause. See the review of the authorities in the recent case, Southern Pacific Co. v. Ralston (C. C. A.), 62 F. (2d) 1026."

The writer prefers the definition that an independent intervening cause is one that could not have been reasonably foreseen by the defendant while exercising due care. That is substantially the definition given in the

Russell case. Can it be said that the fact that there was a ditched car on the right-hand side of the road, and North's car was parked on that side trying to pull the ditched car out, was such an unusual condition that the driver of the bus could not have reasonably anticipated it? We think not. It is a matter of common knowledge, and therefore known to the court, that frequently, day and night, on every road in the country for one reason or another cars are parked on the side of the road. The independent, intervening cause, as above defined, is borne out by American Law Institute Restatement of Torts (Negligence), section 447:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

The court instructed the jury at the request of the appellee that it was the duty of appellant to exercise "a high degree of care for the safety of the plaintiff and the other passengers in the bus." The giving of this instruction is assigned and argued as error by the appellant. A passenger bus line is a common carrier of passengers licensed as such by the state. Why should not the same degree of care apply as to railroad common carriers of passengers? We see none. In 42 C. J. 1054, it is stated that a common carrier by automobile owes to his passengers the same degree of care as is required of any other common carrier. We have here a public common

carrier. The text of Corpus Juris is borne out by the decisions in the notes. We think this principle is sound.

The other assignments of error involving given instructions for appellee and refused instructions for appellant appear to have so little merit that we do not feel called upon to discuss them. The jury was fully instructed for both parties, and reading all the instructions together it is manifest that it was not misled; it understood that if the proximate cause of the injury was the negligence of the bus driver it was to find for appellee, and on the contrary, if it was not, it was to find for the appellant.

Affirmed.