LONG *v.* MAGNOLIA HOTEL COMPANY, et al.

No. 41087          May 4, 1959          111 So. 2d 645

656

*Brunini, Everett, Grantham & Quinn,* Vicksburg, for appellant.

*Vollor & Thames, Teller, Biedenharn & Rogers,* Vicksburg, for appellees.

660

PER CURIAM.

Mrs. Amelia Long sued the Magnolia Hotel Company, owner of the Vicksburg Hotel at Vicksburg, Mississippi, and M. T. Reed Construction Company for negligently pushing or throwing brick and stone from the tornado damaged wall of the eleventh floor of the hotel building onto her adjacent one-story frame structure which was immediately to the east of the hotel building and was prior to the tornado used as a restaurant. The action of the defendants complained of occurred following the devastating tornado which struck the City of Vicksburg in the late afternoon of Saturday, December 5, 1953. The tornado had done considerable damage both to the hotel and to the plaintiff's restaurant building. There were left hanging in a precarious and dangerous position, likely to fall at any time, the loose bricks around an eleventh floor window of the hotel, which were leaning toward the plaintiff's one-story restaurant building on the east side of the hotel wall.

The National Guard and the Adjutant General (Wilson) were on hand to protect the public safety and to do, or have done, whatever things were necessary in that behalf.

It is undisputed in the record that General Wilson ordered that the president of the hotel company have the loose and leaning brick in question removed imme-

diately. Thereupon the latter contacted M. T. Reed, president of the M. T. Reed Construction Company, one of the outstanding construction firms in the state, and arranged with Mr. Reed to have the dangerous condition remedied. Naturally the hotel company would leave to the determination of this experienced construction firm the matter as to what method should be employed in remedying the dangerous situation hereinbefore referred to. Nevertheless, the M. T. Reed Construction Company was acting as the agent, at the request of, and on behalf of the hotel company in getting the loose brick down from the tornado damaged wall of the hotel pursuant to the orders of the military authorities.

On the first trial of this suit for damages the trial judge gave a directed verdict for the defendants on the ground that they were acting in an emergency. We reversed the case on the first appeal, Long v. Magnolia Hotel, et al, 227 Miss. 625, 86 So. 2d 493, saying, among other things: ''In the case that we have here the hotel company and the contractor owed a duty to Mrs. Long to exercise reasonable care to avoid injury to Mrs. Long's property when they undertook to remove the overhanging brick; and the fact that Mrs. Long's building had already been damaged by the tornado did not affect their liability for additional damage caused by their negligence. Whether they were guilty of negligence under the facts disclosed by the record was a question for the jury.''

Upon the trial on remand there was a verdict in favor of the plaintiff for the sum of $19,000.00. Thereupon, and in term time, the defendants made a motion for a new trial on the following grounds: ''1st: That the verdict is excessive, evincing passion and prejudice on the part of the jury; 2nd: That the verdict is contrary to the overwhelming weight of the evidence; and 3rd: * * * The court erred in refusing instructions requested by

defendants and granting instructions requested by plaintiff.''

This motion was filed on November 14, 1956, before the adjournment of the October term of court. Thereupon the trial judge entered an order taking the same under advisement, for decision to be rendered thereon in vacation. No action was taken by the trial judge on the motion during the period which intervened between the adjournment of the term of court at which the $19,000 judgment was rendered and the beginning of the next term of the court in December 1956. After the completion of the December 1956 term of the court, and on January 17, 1957, the trial judge addressed a letter to the respective firms of attorneys representing the parties, in which he stated, among other things, ''I do not feel that the case should be tried again if a judgment fair to all can be reached. So, I am going to ask the plaintiff to remit part of the amount of the verdict, which I think is excessive. Mrs. Long stated, in effect, that her building was damaged in the amount of $7,000.00.'' In stating that Mrs. Long has testified in effect that her building was damaged in the amount of $7,000, the trial judge could have been referring to her testimony where she was asked: ''Q. Now, Mrs. Long, as the owner of this property, please state to us what you consider the fair market value of the entire property, building and lot, immediately prior to the tornado? A. I would say forty-thousand dollars ($40,000.00). Q. Now, as the owner of that property, please state what you consider to be the fair market value of the entire property, building and lot, after the tornado and before the repairs to the hotel were started. A. Thirty-seven thousand dollars ($37,000.00). Q. Now, as the owner of that property, what did you consider to be the fair market value of the entire property, building and lot, after the brick had fallen on it as a result of the repairs

to the Hotel? A. About thirty thousand dollars $30,-000.00)."

The trial judge further stated in his letter "I think Mr. Hennessey's testimony adds up to practically the same." He was comparing the testimony of Mr. Hennessey with that of the plaintiff. Mr. Hennessey, a witness for the plaintiff, was a real estate expert and appraiser, and he had been asked the following questions and gave the following answers: "Q. Now, what in your opinion was the fair market value of the entire property, land and building, as of December 4, 1953, immediately prior to the tornado? A. $28,880.00." And he further testified "Q. What, in your opinion, was the fair market value of the entire property—land and building—when you inspected it in August 1954? A. Well, it would just simply be the value of the land, sir. Q. And what was that? A. Eighteen thousand dollars ($18,000.00)." No one claimed that the land was damaged by either the tornado or the falling brick. The effect of his testimony is, therefore, that the damage caused to the building both by the tornado and the falling brick was $10,880, and the undisputed testimony of M. T. Reed is that the tornado had caused some of the brick and debris to fall on the plaintiff's building from the hotel wall before he went up to remove the leaning brick.

■■ ■ There was proof that the plaintiff's building was constructed for her in 1935 and that she began her occupancy thereof during the year 1936. Since, according to the testimony of the plaintiff's witness Raymond Birchett, her building could have been reconstructed as it was and of the same materials for $17,291.48, we do not think that she would have been entitled to the value of a new brick building erected in conformity with the city's new building code at the cost of $23,669. One court decision from Wisconsin and one from West Virginia which have been called to our attention hold the contrary. These two cases are not shown to be in

accord with the majority rule. In other words, we think that the defendants would not be liable to the plaintiff for any damage in excess of the amount that they actually damaged her then existing building by the throwing of the bricks and stone onto the roof thereof, *as damages to the building itself.* ██ ██ It has always been the rule in this state that in a tort action to recover damages done to the property the amount recoverable is the aggregate of the damages that resulted from the tort itself, except in a proper case for punitive damages, and we do not think that this is such a case.

In the case of D. L. Fair Lumber Co. v. Weems, 196 Miss. 201, 16 So. 2d 770, the agent or employees of the D. L. Fair Lumber Company were not attempting to remedy a dangerous situation in an emergency nor acting under military orders when they cut the timber down on and destroyed the fence of Mr. Weems. We do not think that case is applicable or controlling here.

██ ██ We are of the opinion that the plaintiff is entitled to recover as damages to her personal property for the various items listed in her bill of particulars to the extent that she is able to show by a preponderance of the evidence that they were actually damaged by the action of the defendants rather than by the tornado.

██ ██ Under the decision in the case of Union Motor Co. v. Cartledge, 133 Miss. 318, 97 So. 801, we are of the opinion that an order which undertook to sustain the motion for a new trial in vacation after a term of the court had intervened without another order having been entered on the minutes of the intervening term further continuing the motion for a new trial to be decided in vacation, was a nullity, but a majority of the Judges are of the opinion that the effect of this action left the motion for a new trial undisposed of and that the trial judge had jurisdiction and authority to render a further order at the January 1957 term of the court disposing of the motion for a new trial, and that

he was justified in then sustaining the motion for a new trial on the grounds stated herein, as hereinbefore set forth in paragraph 5.

■ ■ As to the verdict rendered by the jury after the motion for a new trial was sustained, and which verdict was for only $5,000, we are of the opinion that that verdict was inadequate as compensation to the plaintiff for the damages shown by the competent evidence. And under the cases of Gordon, et al v. Lee, 208 Miss. 21, 43 So. 2d 665; Swartzfager v. Southern Bell Tel. & Tel. Co. and G. L. Martin, No. 41,062, decided on April 6, 1959; and the case of Green v. Hatcher, 105 So. 2d 624 (not yet reported in Miss. Reports), we feel justified in reversing and remanding this case for a trial before another jury on the question of damages alone. But we do not feel justified in reinstating the former verdict of $19,000, since we think that it is so grossly excessive as to evince bias, passion and prejudice on the part of the jury, and because we are of the opinion that the verdict is contrary to the overwhelming weight of the competent evidence, and on account of one erroneous instruction.

Our cases furnish this Court a clear guide as to how we should consider the action of the trial court in granting a new trial. In Smith v. Walsh, 63 Miss. 584, the Court said:

■ ■ "We are unwilling to disturb the judgment of the lower court in granting a new trial upon the first verdict. *The rule that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal, and supported unless manifest error appears, and is particularly applicable where the new trial has been granted,* since in such cases the rights of the parties are not finally settled, as they are where a new trial is refused, but another trial is had. Dorr v. Watson, 28 Miss. 383." (Emphasis ours).

■■ In Harper, et al v. Mississippi State Highway Commission, 216 Miss. 326, 62 So. 2d 375, the Court said: "Section 1536, Code of 1942, recognizes the right of a trial court to grant as many as two new trials if the facts and circumstances are such as to warrant the court in doing so. *And the action of a trial court in setting aside a verdict and granting a new trial will not be disturbed unless there is a manifest abuse of his discretion in so doing.* We are unable to say from the record on the first trial, which was made a part of the record on the second trial by a bill of exceptions, as provided for in Section 1537, Code of 1942, that the trial court was guilty of an abuse of his discretion in setting aside the verdict of the first jury in the amount of $17,000, and especially in view of the fact that he offered to let a verdict for as much as $10,000 stand, provided the remittitur of $7,000 was entered by the landowners.

"The correctness of the action of the county court in setting aside the $17,000 verdict at the end of the first trial *is not dependent alone upon the question of whether or not the verdict was grossly excessive,* but the court was also entitled to consider the basis on which the damages were evidently assessed on the first trial, and which fact was also assigned as error on the motion for a new trial in the county court." (Emphasis ours).

■■ The question is, can we say that there was a manifest abuse of the trial court's discretion in granting the new trial after the first verdict? The instructions granted the plaintiff on the measure of damages in the first trial wherein a jury verdict was entered, included the following: "Loss of earnings, *and* loss of use of her building for a reasonable time, if any, proximately caused by and directly attributable to any negligence acts of either or both defendants, if any." (Emphasis ours). It is readily noted that this instruction authorized the plaintiff to recover for the loss of earnings *and* the loss of use of her building for a reasonable time. This

authorized the jury to pyramid damages. ██ ██ Actually, under the proof in this case the measure of damages in this regard is not the loss of earnings in the operation of the restaurant but the loss of the value of the use of the premises. In no event could she recover both, yet that is what this instruction authorized. It was a clear and manifest error. Not only are we unable to say that there was a manifest abuse of discretion by the trial judge in granting the new trial, but it appears to us that he was manifestly correct on this question and we cannot say that he was manifestly wrong in finding the damages were excessive.

██ ██ In the case of Gibson v. Lindsey, (Miss.) 103 So. 2d 345, *only the proper elements of damages had been submitted to the jury*, and we adhere to the rule so strongly and correctly enunciated in that case, under the facts thereof, but the majority of the Judges are of the opinion that the $19,000 judgment in the instant case should not be upheld or reinstated.

As to the loss of earnings or profits during a reasonable time required for the restoration of the building, we are of the opinion that the measure of damages would be the value of the loss of the use of the building and equipment during such period of time.

It would unduly prolong this opinion to undertake to recite or discuss all of the testimony in the long record here under consideration upon which we base the foregoing conclusions. Then, too, we have concluded that it would be proper to omit such recital and discussion since the case is to be retried on the question of damages only.

As to any delay that may have been occasioned the appellant in obtaining a final determination of this case, it is sufficient to say that both of her appeals to this Court have been disposed of without any unnecessary delay.

We have considered the various other assignments of error and we do not think that reversible error was committed except on the ground that the last verdict for $5,000 was inadequate to compensate the plaintiff for the damages shown to have been sustained.

Reversed and remanded for trial on issue of damages only.

All Justices concur, except *Arrington, J.,* who took no part, and *Hall, Lee,* and *Holmes, JJ.,* dissenting.

HALL, J., Dissenting:

I respectfully dissent from the conclusion reached in the majority opinion in this case. All of the Judges are agreed that the trial court had no right or authority to render an opinion and enter a judgment in vacation inasmuch as a term of circuit court had intervened between the time of the order taking the motion for a new trial under advisement and the time when the opinion was issued and a judgment entered thereon without a new order having been entered at the regular December 1956 term of court. Section 1403, Code of 1942, provides for court terms in Warren County, and while it specifies certain terms for civil business and certain terms for criminal business, it does not say that at the several terms civil business or criminal business *only* shall be disposed of as some of the statutes provide, and this distinction between the statute here involved and other statutes which limit the terms of court to civil or criminal business *only* is made clear in the case of Strain v. Gayden, 197 Miss. 353, 20 So. 2d 697.

What this Court said in Union Motor Car Company v. Cartledge, 133 Miss. 318, 97 So. 801, is directly in point on this proposition. Since we were all in agreement as to the invalidity of the opinion and order in vacation on the motion for a new trial, I shall not belabor this point further, but the majority opinion points out the grounds alleged in the motion for a new trial and proceeds to

hold that when the circuit judge ordered a remittitur in vacation that the same was made final by a subsequent order of the court on January 28, 1957. That order is as follows: ''Plaintiff having declined to accept remittitur in the above matter pursuant to order entered on January 18, 1957, the motion for a new trial as granted is hereby made final, and it is now ordered that this cause be continued for trial until the April term next of this court.'' This is the order and this is all of the order, and it is a peculiar situation that a void vacation order can be made final in term time, especially when there are no findings by the trial judge which would warrant the granting of a new trial. I shall not take the time to quote the trial judge's findings, but boiled down I will say that he does not find anything but simply asked the plaintiff to remit part of the amount of the verdict for $19,000 ''which I think is excessive.'' He does not at any time in his findings or in his orders say that the jury were unduly influenced in arriving at their verdict, or that the verdict for $19,000 is unreasonable, or that it would cause an enlightened conscience to shrink at the result, or that it is not a fair and true verdict, and from the whole record it is apparent that the trial judge, without any findings, substituted his opinion for the finding of the jury. I think that the case of Gibson v. A. P. Lindsey, Distributor, Inc., 103 So. 2d 345, not yet reported in State Reports, is directly in point and I take the liberty of quoting at length therefrom:

''The trial judge, in his written opinion, passing on the question of a new trial, observed that the medical expenses amounted to $576 and that the total loss of time for six months would amount to $1,040. However, in view of the doctor's statement, the court thought that the verdict was excessive without considering any contributory negligence. The final conclusion was: 'Therefore, I say in fairness to all concerned I believe

the sum of $2500.00 would be fair, reasonable and adequate.'

"Nowhere did the court find that the amount of the verdict was so large as to shock the enlightened conscience, or that it was unreasonable, or that it appeared to be the result of bias or prejudice, or that it was influenced by passion or corruption, or that, if permitted to stand, it would amount to a manifest miscarriage of justice. It is obvious that the learned judge, insofar as the amount of the award is concerned, simply substituted his judgment for that of the jury.

"In Chapman v. Powers, 150 Miss. 687, 116 So. 609, 611, this Court announced the following rule: 'The determination of the question whether the verdict of the jury in a given case is the result of passion or prejudice is fraught with much difficulty. *The court in passing upon the question is not authorized to substitute its judgment for that of the jury, for the amount of damages to be awarded is peculiarly within the province of the jury.* But, where the award is so excessive, on the one hand, or so inadequate, on the other, as that it is manifest that the jury were unduly influenced in arriving at their verdict, it is the duty of the court to award a new trial upon that ground alone. Putting it differently, if, to let the verdict of the jury stand, it is apparent to the court that there will be a manifest miscarriage of justice, a new trial should be granted.' (Emphasis supplied.)

"In Shelton v. Underwood, 174 Miss. 169, 163 So. 828, 830, the Court said: 'Before the trial court is authorized to set aside the verdict of the jury, there should be such a state of facts as would render the verdict unreasonable, or show that it was the result of bias and prejudice, amounting to corruption. * * * It must be such a verdict as would cause an enlightened conscience to shrink at the result. The jury has opportunity to see the witnesses and to judge of their fairness, bias, or

prejudice, or lack thereof, and from the whole situation arrive at the truth of the matter. The very value of a jury trial consists in the fact that it is a body of twelve men of fair and impartial minds. It is true the judge has a better knowledge of the rules of evidence, and a better capacity to estimate legal and factual conclusions, than have the jurors; but he cannot substitute his views for that of the jury merely because he feels that the conclusion reached by the jury is wrong. We know that the judge in trying this case, and other judges in this state, are fair and upright men, learned in the law, and only desire to see justice done; but, nevertheless, the jury is an institution which often safeguards the right of litigants. In case a judge shows bias or prejudice, there is no method by which a litigant may eliminate this bias, or get another judge where the judge is not disqualified, for reasons set forth in the Constitution and statutes.

" 'A verdict should only be set aside where it is manifest, from the evidence and surroundings, that it is not a fair and true verdict.'

"In Oliver Bus Lines v. Skaggs, 174 Miss. 201, 164 So. 9, 12, the Court said: 'Appellant assigns and argues that the verdict is too large; so large that it evinces passion and prejudice on the part of the jury. There is often great difficulty for an appellate court to determine this question. Ordinarily a fair-minded jury is more competent than any judge to fix the amount of damages; however, when the amount awarded is so large that it is shocking to the enlightened conscience it is the duty of the court to set it aside and award a new trial on that ground alone.'

"In Sandifer Oil Co., Inc. v. Dew, 220 Miss. 609, 71 So. 2d 752, 755, the opinion adopted the following excerpt from the case of Mississippi Central Railroad Company v. Hardy, 88 Miss. 732, 41 So. 505, to wit: 'It was the province of the jury, and the jury alone, to measure

in dollars and cents the amount due him for physical and mental anguish and suffering, and, unless in a case where the verdict plainly shows that the jury must have been influenced by passion, prejudice, or corruption, this court never interferes with their finding as to damages. * * * This Court has no scale delicate enough to weigh physical and mental anguish. At best it is an extremely difficult task. The law has committed this delicate task to the unbiased judgment of the 12 plain, pratical, everyday men who compose the jury, and it can nowhere be more safely rested than in the application of their good sense and honest judgment to the particular facts proven in each particular case.'

"In Illinois Central Railroad Company v. Harrison, 224 Miss. 331, 80 So. 2d 23, 26, the opinion cited the first mentioned excerpt from Shelton v. Underwood, supra, and reiterated the principle that: 'The judge may not substitute his judgment for that of the jury merely because he would have decided the matter differently. * * * Conflicts in the testimony and the veracity of witnesses are for the determination of the jury, not the judge,' citing a number of cases.

"It may be conceded that the verdict was large. Of course, $5,000 is a substantial sum of money. But when there is taken into consideration the kind and nature of Gibson's injury, his loss of earnings and medical expenses, and the pain and suffering which the jury had a right to believe that he endured, it must also be conceded that his damage was substantial. Had the verdict come here without diminution, this Court, following the applicable principles, which have been stated above, in its appraisal thereof, would have declined to reduce the amount of the award. The Court is further of the opinion that the trial judge should not have done so, and that he should not have substituted his judgment for that of the jury.

"Consequently, on direct appeal, the judgment of the trial court, in ordering a remittitur in the amount of $2,500 is reversed and a judgment will be entered here for the appellant, reinstating the original judgment of $5,000 in his favor, based on the verdict of the jury. On cross-appeal, the judgment is affirmed."

It is to be observed that the author of the controlling opinion in the case at bar concurred in the foregoing announcement of the law and one of the Judges joining therein with him concurred in the foregoing announcement of the law. Moreover, the author of the opinion in the case of Illinois Central Railroad Company v. Harrison, 224 Miss. 331, 80 So. 2d 23, 26, now agrees with the majority, but in that case he said "The Judge may not substitute his judgment for that of the jury merely because he would have decided the matter differently," and the author of the majority opinion in the case at bar, as well as two of the Judges who joined with him therein, agreed to the foregoing statement of the law.

It is interesting to note that the controlling opinion says that the majority of the Judges joining therein are of the opinion that since the trial court on January 28, 1957, during the regular term, sustained the motion for a new trial, he was justified in so doing on the grounds stated in the motion. I have gone back and examined the original record in Gibson v. Lindsey, supra, and it is worthy of note that in that case the trial judge entered an order taking the motion for a new trial under advisement and that the motion for a new trial contained identically the same allegations as in the case at bar, among other things that the verdict was contrary to the overwhelming weight of the evidence and that it was excessive and evinced passion and prejudice on the part of the jury. In the Gibson case the trial judge went ahead and rendered a written opinion and entered an order sustaining the motion for a new trial unless a remittitur was entered, just as in the case

at bar; and on appeal this Court decided as hereinabove shown that the trial judge exceeded his authority in sustaining the motion for a new trial without any finding that the verdict was against the overwhelming weight of the evidence or that the verdict was so excessive as to evince passion and prejudice on the part of the jury, and in that case the Court did not hold that since the opinion and order on the motion for a new trial were unauthorized that the motion was still pending for decision at a subsequent term, but on the contrary since he had no right to substitute his judgment for that of the jury, his judgment in the case was reversed and a judgment was here entered reinstating the original judgment which was based on the verdict of the jury.

It is undisputed that after the tornado the appellant's building could have been repaired and replaced at a cost of from $2,500 to $3,000. The contractor, Mr. Thomas Darby, a wholly disinterested witness, went on top of the building and inspected the same after the tornado. Mr. Darby testified that he had just finished putting a new roof covering on top of the building the evening of the cyclone with the exception of one strip of roofing. He said that he went to the building the night of the tornado but his flashlight was dim and he could not tell much about the damage. He also returned the next day and looked over the whole building and observed only one hole in the roof. The numerous photographs which were introduced in evidence, made after the damage sued for, showed a distinct separation of the west wall of the appellant's building from the hotel building; but the photograph made by the U. S. Engineers after the tornado and before the damage sued for fails to show this separation, and Mr. Darby was unable to see the same until after the brick were dumped on the appellant's building. Mrs. Long testified positively that her building was not separated from the hotel after

the tornado but became separated as the brick from above were piled on her.

The controlling opinion mentions the testimony of Lawrence Hennessey, a real estate expert, and at this point the majority have fallen into the same error that the lower court fell into, to wit: Substituting its judgment for that of the jury.

The controlling opinion says "In other words, we think that the defendants would not be liable to the plaintiff for any damage in excess of the amount that they actually damaged her then existing building by the throwing of the bricks and stone onto the roof thereof." It is strange that the majority opinion cites no authority whatsoever in support of this conclusion. What the Court is saying is that the building code of Vicksburg should not be taken into consideration in arriving at the amount of appellant's damage. Directly the opposite was held in the case of E. E. Zindell v. Central Mutual Insurance Company of Chicago, et al. (Wisc.), 269 N. W. 327, 107 A. L. R. 1116. The first paragraph of the syllabus in that case is: "Plaintiff in an action in tort for damage to his garage is entitled to have the garage restored in such a way as to meet the requirements of building regulations applicable to repairs of the extent rendered necessary by the tort, he having otherwise had the right to maintain the building in its previous condition." In 107 A. L. R., beginning on Page 1122, there is an annotation as to the amount recoverable from one liable for damage to a building as affected by building regulations applicable to restoration or repair of damaged buildings. The Zindell case is cited in this annotation and there is nothing therein which conflicts with the holding of the Wisconsin court. The controlling opinion says this case is not shown to be in accord with the majority rule but the opinion studiously avoids citing one word of law as to the majority rule.

In 15 Am. Jur., Damages, Section 113, it is said near the middle of Page 524: ''The owner is entitled to have the building restored so that it can be used for all purposes for which it was being lawfully used at the time it was injured and in such a way as to meet the requirements of building regulations applicable to repairs of the extent rendered necessary by the tort, although he otherwise had the right to maintain it in its previous condition. In other words, the cost of repairing or reconstructing the structure so as to comply with building regulations is the proper guide, and where the cost of reconstruction is the proper measure of damages, the defendant is liable for an increased cost of reconstruction due to building regulations which do not permit the restoration of the building with the same materials or in the same manner used in the erection of the original building.'' To the same effect as the Zindell case is Stenger v. Hope Natural Gas Company (W. Va.), 90 S. E. 2d 261. See also Ollie v. Security Mutual Underwriters, 235 Fed. 2d 932 and Fidelity & Guaranty Insurance Corporation, et al. v. Mondzelewski (Del.), 115 Atl. 2d 697. How in the world the majority of this Court can ignore the above-mentioned law and lay down a contrary rule is beyond me. The trial court was evidently of the same opinion as the majority of this Court because he declined to admit the building regulations in evidence, in which he was palpably in error.

As to the amount of damages in this case, Mr. Raymond Birchett of Jackson, Mississippi, an architect and engineer, made a complete diagram of appellant's building and testified in this case that the cost of replacing the appellant's building in view of the requirements of the building code, which are a part of the record in this case, is $23,669. This testimony was by a competent and capable man from another city who was wholly disinterested and pertained to the damage only to the building.

Much is made in the controlling opinion about the military authorities ordering the brick removed which had been loosened by the force of the tornado. What the controlling opinion entirely ignores is the testimony of Mr. U. J. Little of Jackson, Director of the City Building Department, who went to Vicksburg on request of the Mayor of Jackson to offer the services of the City of Jackson in connection with their tornado damage and who later went back to Vicksburg on the request of the Mayor of Vicksburg. He said that the military personnel was stationed on the ground floor of the Vicksburg Hotel, and he said that one of the military personnel was Chief Aide to General Wilson and when Mr. Reed was having the brick thrown from the top of the hotel onto the appellant's building adjacent thereto Col. Wright issued an order for Mr. Reed to stop throwing the bricks off or he was going to put him in jail, and as soon as this information was communicated to Mr. Reed the dumping of the brick from the top of the hotel was stopped. As a matter of fact on the extreme southeast corner of the top of the hotel there was a bunch of brick which had been broken loose and it was these brick that the military had desired to have removed, and the sidewalk was walled off and that bunch of brick was pushed overboard, most of them falling onto the sidewalk, but there was never any order to dump all of the brick along the side of the hotel onto Mrs. Long's property.

It is inferred that the brick could not be removed from the side of the hotel without simply pushing them overboard. A consulting engineer from New Orleans testified as to the method of constructing a scaffold or platform underneath the brick so that they could be removed without throwing them on Mrs. Long's building. It is true that Mr. Reed said that the methods suggested by this consulting engineer could not have been followed, but it appears that after these brick were thrown

down Mr. Reed obtained a steel platform which he fasten-
ed to the side of the hotel and the reconstruction of the
brick wall proceeded from this steel platform which en-
tirely disproves the idea that the erection of a platform
was not feasible.

It is interesting to note that in the controlling opin-
ion, on the value of real estate, there is quoted the testi-
mony of Mrs. Long, but little is said about the damage to
her personal property, some of which was completely
destroyed by the dumping of the brick and concrete on-
to her building. Only a small portion of the valuable
things itemized in the bill of particulars was removed by
Mr. Darby to the appellant's garage. She made no ef-
fort to conceal any information as to what was removed
to the garage and what was not, and there was no testi-
mony whatsoever by the appellees which disputed her
evidence. The valuable refrigerator, counter, and other
fixtures were completely ruined by the appellees' act
and not by the tornado. As to the production of records
by the plaintiff, she had nothing to conceal and produced
her income tax reports but stated that all of her other
records were destroyed in the tornado, but it is undis-
puted that she and her mother and daughter all made
their living out of the restaurant.

The appellant requested, and the lower court re-
fused, an instruction which would have authorized the
recovery of punitive damages, and the opinion says that
this is not a proper case for punitive damages. The
record shows that Mr. Reed took no precautions for
protecting the building of Mrs. Long and he admitted
that he just wantonly pushed off one hundred to one
hundred and fifty brick, as well as some of the concrete,
either from the coping or from a window ledge, and
let it all fall on the Long building. His action in so do-
ing was wanton in the extreme and in utter disregard
of the rights of the appellant. The Court thought en-
tirely differently in the case of D. L. Fair Lumber Com-

pany v. Weems, 196 Miss. 201, 16 So. 2d 770, wherein it said, after citing Mississippi authorities on the subject, "* * * and it needs no authority to sustain the proposition that the breaking down and destruction of another's fence is a tort, and when done under circumstances of such gross and persistent wrong as to manifest an indifference to the consequences and of the rights of others, that it is a tort which will justify punitive damages; and that is what the jury found, and was well supported by the evidence and finding in this case." It is most regretable that the majority of the Court have departed from the law of Mississippi on the questions discussed herein and have departed from the law from other jurisdictions as to which there is not a single case, so far as I can find, which supports the proposition that the appellant is entitled to no damages above the damage to her existing building which she cannot replace except under the building code, and she frankly said that she has not replaced it according to the building code because she does not have the money necessary to so rebuild it. This case has been tried three times. I don't think that the $19,000 judgment was properly set aside, and I am of the opinion that the $5,000 judgment of the lower court should be reversed and the $19,000 judgment reinstated, just as was done in the case of Gibson v. Lindsey, supra.

The controlling opinion cites Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665; Mrs. Gladys Swartzfager v. Southern Bell Telephone and Telegraph Company and G. L. Martin, not yet reported, and Green v. Hatcher, 105 So. 2d 624, not yet reported in the State Reports, in all of which this Court reversed and remanded the case because of inadequacy of verdicts, but I fail to see in what respect those cases are in point on any question raised in this case. In those cases there was no verdict which the court set aside and refused to reinstate the original verdict. Nobody contends here that we would be justified in

writing an entirely new verdict so as to infringe on the province of the jury. It is only contended that the $19,000 verdict should be reinstated and there is ample precedent for such a contention. Our reports are full of cases where an original verdict has been set aside by the trial court on a judgment notwithstanding the verdict entered by the trial court, and, on appeal to this Court the original verdict has been reinstated and judgment entered thereon in this Court. This is all that appellant seeks.

The controlling opinion says that there was an erroneous instruction granted to the appellant at the trial when the $19,000 verdict was rendered. The briefs in this case make no complaint about the alleged erroneous instruction, but the controlling opinion goes out of the way to refer to an instruction which it is said was incorrect. The instruction in question tells the jury that if they find for the plaintiff, their verdict should be for such amount as in their judgment the evidence in this case warrants, and then it goes on to say that in determining the amount of damages, if any, they may take into consideration the following:

"The difference in the total fair market value of Mrs. Long's entire property immediately before and immediately after M. T. Reed dislodged the loose brick from the upper east wall of the hotel as shown by the evidence.

"Any damage in the fixtures, furnishings, equipment and other personal property in Mrs. Long's building caused by either or both defendants based on the actual value thereof in its condition at the time of any such damage by either or both the defendants, if any.

"Loss of earnings, and loss of use of her building for a reasonable time, if any, proximately caused by and directly attributable to any negligent acts of either or both defendants, if any."

The controlling opinion says that this instruction authorized the plaintiff to recover for the loss of earnings and the loss of use of her building for a reasonable time, and that this authorized the jury to pyramid damages.

As I see it, Mrs. Long was entitled to recover for all of the damages which are mentioned in this instruction and that there was no authority conferred upon the jury to pyramid the damages. 15 Am. Jur., Damages, Section 131, says that the rental value of real property may be recovered. Following this, in Section 133, American Jurisprudence also discusses the question of injury to, or interruption or destruction of, business, and this is mentioned not merely as the sole damage which may be recovered but as one of the elements of damage. Section 133 says: "The destruction or interruption of a business, or an injury thereto, by the wrongful act of another is a proper element of damage, provided, of course, it is the natural and proximate result of such act, and the injured person is entitled to recover all such damages as are the natural and proximate result of the wrongful act complained of." Following this, there is discussed the damages resulting from a breach of contract, and the author of the text then reverts to a discussion of the recoverable elements of damage in general and says: "Recoverable elements of damage in such cases are the loss of commercial credit or of business standing, the loss of customers or business, if not too remote, plus, according to some authorities, the resulting loss of profits, the loss of employees, and the additional expense made necessary in conducting a business by the wrongful act of another. In some jurisdictions the owner may recover the rental or usable value of the property in case of the interruption or curtailment of the operation of a factory or plant. The loss sustained owing to the enticing away or malicious arrest of the plaintiff's servant or the wrongful taking and withhold-

ing of his chattels, may be recovered, provided such loss is the natural and proximate consequence of the tortious act."

It seems clear that American Jurisprudence authorizes the recovery of both elements of damage which are included in the instruction discussed in the controlling opinion and this is without reference to the question of pyramiding damages.

The damage in this case was caused shortly after the Vicksburg tornado of December 5, 1953. If there was ever a case in which a plaintiff seeking justice has been dragged around and unjustly delayed and is required to submit to further delays and expense, this is it.

LEE, J.

The evidence for the plaintiff was to the effect that the damage to the building from the tornado could have been repaired for $2,500 or $3,000. Raymond Birchett, an architect and engineer, testified that he made two estimates in connection with the building after the dumping of the brick and stone thereon by the appellees. The first was based on the cost of repairing the building *without* compliance with the building code of the city, the amount thereof being $17,291.48; and the second was based on the cost of such repair *in* compliance with the building code, the amount thereof being $23,669.

From both of the estimated amounts, $2,500 or $3,000, the damage from the tornado, necessarily had to be subtracted. Deducting these amounts, respectively, from the damage on the first estimate, the remainders are $14,791.48 and $14,291.48, respectively. While some of the appellant's personal property in the building was removed, apparently undamaged, she did testify that her personal property damage was $4,557. When that amount is added to either of the above mentioned remainders, the sum being slightly more in the first, and slightly less in the second, instance than the jury's verdict of

$19,000, I am unable to see how the verdict was even excessive, much less grossly excessive.

But repairs to the building so that it could be restored to its former use must be made in compliance with the building code of the city. No obstacle would have been encountered, in this respect, in repairing the tornado damage. The jury found that the negligence of the appellees proximately caused the damage to the building subsequent to that inflicted by the tornado. As I see it, the appellant was entitled to be made whole in order that she might use the building as she did formerly. If her damage should be admeasured under that rule, clearly the jury was warranted, under Birchett's second estimate, in returning a verdict for $19,000 and the damage to personal property could be entirely forgiven and forgotten.

The recent case of Bibson v. A. P. Lindsey Distributor, Inc., (Miss.), 103 So. 2d 345, collated a number of our cases and reaffirmed their holdings on the question here involved. I am of the view that the trial judge, in the present case, did exactly what the trial judge did in Gibson v. Lindsey, namely, substituted his judgment for that of the jury. Consequently, I think that he was in error in setting aside the verdict and judgment for $19,000 in the first trial, and that this Court should now reverse this case and reinstate the original judgment.

HOLMES, J., Specially Dissenting:

I dissent to the extent that in my opinion the $5,000 judgment of the lower court should be reversed and the $19,000 judgment reinstated.

ON SUGGESTION OF ERROR

GILLESPIE, J.

Following the decision in this case, reported in 111 So. 2d 645, the appellees filed a suggestion of error rais-

ing the question whether we erred in holding that the $5,000 verdict in the last trial was inadequate. No other question is before us.

We have carefully reconsidered the evidence in the light of the recognized rules of law applicable to the problem. We are of the opinion that we were in error in holding that the $5,000 verdict was so inadequate as to require a reversal.

■■ ■■ In deciding the question before us, we must reconsider all the evidence offered at the last trial, and for the purpose of deciding whether the jury's verdict for $5,000 was justified under the proof, all the evidence must be considered in the light most favorable to the appellees (defendants).

There was evidence that appellant's building was a total loss from the tornado of December 5, 1953. One of the appellant's own witnesses so testified. A number of witnesses testified that after the tornado and before appellees threw the bricks on the Long building, the building was pulled away from the hotel and was leaning to the east. The proof showed without dispute that the front windows were blown out and the front wall pushed in; that the partition was blown out of place inside the building; and that the entire rear wall was blown out leaving the wall at the northeast corner cantered to the east. The jury had the benefit of photographs showing the damage to the roof after the tornado and before the appellees threw the bricks on the building. They also had photographs taken after the bricks were thrown on the building by appellees. There was proof that there were 800 to 1000 bricks blown loose from the wall of the hotel directly over the Long building during the tornado, and some stone, but it is not shown how many of these brick fell on the Long building. About 200 brick, one or more pieces of stone, and a window frame fell on the Long building when appellees pushed them off after the tornado. A number of witnesses testified

that there was no substantial damage done to the Long building by appellees in throwing the brick on the building. It is a fair appraisal of the testimony touching the damage to the building so say that while appellees did some damage thereto, the jury was justified in finding that the building was substantially destroyed by the tornado and that it was unrepairable before appellees threw the brick on it.

As to the damage to the personal property in the building, the testimony for appellant is inconclusive. The jury would have had difficulty in determining just what specific items were removed from the building after the tornado and before the appellees threw the bricks on the building. And the same may be said as to what was damaged by the tornado, and what was damaged by appellee's acts. We think the jury could have found that the refrigerator was not damaged by appellees. This was the largest item in this category. The total claimed for damages to personal property was $4,457.00. Under the proof, the jury was justified in finding that appellant was damaged much less than the amount claimed.

The jury was justified, as already stated, in finding that the building was not repairable after the tornado, and in that event, appellant was entitled to nothing for loss of the value of the use thereof.

██ ██ Considering all the evidence in the light most favorable to appellees, as we must do, and considering the reasonable inferences which the jury might draw from the evidence, we are of the opinion that the $5,000 verdict was justified. This requires the affirmance of the case.

Justices Hall, Lee and Holmes were and are of the opinion that in the former opinion the Court should have reinstated the $19,000 verdict, but all concur in holding that under the proof on the retrial, which resulted in the $5,000 verdict, the jury was justified in rendering the $5,000 verdict.

Suggestion of error sustained.

All justices concur, except *Arrington, J.,* who took no part.