GORDON, et al. *v.* LEE.

In Banc. Dec. 31, 1949.

No. 37163 (43 So. (2d) 665)

**Mitchell & Hill,** for appellant.

24

**H. W. Gautier** and **Wallace, Greaves & Wallace,** for appellee and cross-appellant.

Appellee's response to brief for appellants.

Mitchell & Hill, for cross-appellee.

**McGehee, C. J.**

The plaintiffs, E. C. Gordon and others, sue as parents, brothers, and sisters respectively of Rose Emeline Gordon, deceased, on account of her alleged wrongful death which was occasioned by being run over by an automobile driven by the defendant, Roy R. Lee. The trial in the Circuit Court resulted in a verdict in favor of the plaintiffs for the sum of only $2,000, for the death of this five-year-old girl. There was a motion for a new trial made by the plaintiffs on account of the inadequacy of the damages allowed. There was also a motion for a new trial made by the defendant on the ground, first, that no case of liability had been made out against him by the proof in the case, and, second, that if there was sufficient evidence to be presented to the jury on liability, the verdict should be set aside as being contrary to the great weight of the evidence.

We have carefully considered this case in a number of conferences, and we have reached the conclusion that the verdict should be permitted to stand on the question of liability. The proof discloses that the defendant and his wife were driving along Beach Boulevard in the City of Pascagoula in a 1940 Plymouth automobile, and at a rate of speed which they fixed in their testimony as being approximately 15 miles per hour when the defendant's automobile struck and killed the child. Certain officers testified, however, that the defendant told them after the accident that he was driving between 25 and 30 miles per hour; and that he was either looking south at the waters of the Gulf of Mexico or to the north toward the residences which faced the paved highway and the beach, one of the witnesses claiming that the defendant said he was talking to his wife at the time. The wife testified

that she was looking toward her husband as they drove along the paved highway at the place of the accident.

Both the defendant, Lee, and his wife testified that they did not see the child as it came into the highway ahead of their automobile, and did not know that they had had an accident until they felt that the car had bumped against something; that they then looked back and saw the child in the highway at a distance of approximately 15 or 20 feet behind them. The wife admitted on cross-examination that the driver could have seen the child if it had been there and he had been looking, but she further testified in substance that the child was not in the highway until it was too late for them to see it over the hood of the car.

Photographs were introduced and were made a part of the record now before us which show that the accident occurred in the south lane of the highway, while the automobile was traveling east, from 5 to 7 feet out into the highway, according to some of the witnesses, and approximately 4 feet from the south edge of the pavement, according to the testimony of the defendant and his wife; that there was a seawall between the highway and the water's edge. It is assumed in the proof that the child, which was unattended, had been playing in the sand and had climbed over the seawall and entered the highway, either by going through a vent 10 inches high and 48 inches long in a sort of a curb, 19 inches high, built of concrete, at the south edge of the pavement on the highway, or that it had climbed over this concrete curb and entered the highway.

It was for the jury to consider as to whether this five-year-old child would have likely climbed over the concrete curb before entering the highway, rather than having entered the highway through the vent in the curb, and if by the former method the driver of the car should have seen it on the curb in time to avoid the accident, and if by the latter method whether or not the

child, after crawling through the vent, would have had time to stand erect and then reach the point in the highway where the accident occurred without affording the driver of the automobile ample opportunity to see her, if he had been keeping a constant lookout and anticipating the presence of pedestrians in the highway as required by law. It could not have assumed that if the child crawled through the vent in the curb, it would have continued to crawl out into the highway, the child being five years of age.

██ The defense against the charge of negligence is predicated primarily on the contention that the defendant was only 5 feet 7 inches tall, and that his vision of the top part of the vent in the concrete curb did not begin closer than 63 feet head of him, on account of his view being obstructed by the hood of the automobile and by the open airvent thereon. Whether or not a person can see the highway at close proximity to where he is seated behind the steering wheel depends upon how the car seat is adjusted, as well as on his own height. We cannot subscribe to the theory that the driver of an automobile is in no event responsible for an accident to a pedestrian which occurs within 63 feet of where he is seated behind the steering wheel.

We have concluded therefore that no error was committed in submitting the case to the jury on the question of liability and that the verdict of the jury in that behalf is not against the weight of the evidence.

██ The plaintiffs took the appeal to this Court on the question of the inadequacy of the damages allowed for the death of the child, and the defendant has taken a cross-appeal on the question of liability on the part of the defendant. Being of the opinion that the case should be affirmed on liability, and that there is no reversible error in that regard, we are confronted with the necessity of determining whether or not a verdict of $2,000

should be permitted to stand as adequate damages to the parents, brothers, and sisters of a five-year-old girl.

Not since the year 1889, when the case of City of Vicksburg v. McLain, 67 Miss. 4, 6 So. 774, was decided, has this Court been called upon to say whether or not a verdict of $2,000 for the death of a child of tender years is adequate. At the time of that decision the sum of $2,000 was worth considerably more than at the present time. Section 1453, Code of 1942, under which the present suit is brought, provides among other things that: "In such action the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind *to the decedent* and all damages of every kind to any and all parties interested in the suit." (Italics ours.)

This statute further provides that: "If the deceased have neither husband, or wife, or children, or father, or mother, or sister, or brother, then the damages shall go to the legal representative, subject to debts and general distribution, and the fact that the deceased was instantly killed shall not affect the right of the legal representative to recover." This would indicate that creditors, who sustained no damages because of loss of companionship, loss of anticipated gratuities, mental anguish, etc., or prospective earnings of a child prior to majority, would nevertheless be entitled to recover something for the death of the child whether killed instantly or not, and would further indicate that where there are such surviving relatives they would be entitled to recover something more than merely conmpensation for the items of damages above mentioned, and for physical pain and suffering.

Moreover, in the case of Cumberland Telephone & Telegraph Co. v. Anderson, 89 Miss. 732, 41 So. 263, in an opinion written by Justice Whitfield, it was stated: "Further than this, it is also true that in a suit of this sort by the mother the extent of recovery, before majority

of the child killed, is the value of the services of the child from the time of death up to majority, plus such damages as the jury may fairly award as compensation for the physical and mental anguish endured by the child killed between the injury and death, to which must also be added any such gratuities as the evidence may show the mother had a reasonable expectation of receiving before or after majority, and also whatever sum the son might have recovered as the present value of his own expectancy. These four elements of damages are all proper.''

In the case of New Deemer Mfg. Co. et al. v. Alexander et al., 122 Miss. 859, 85 So. 104, 107, it was said that: ''The object of the statute is to furnish compensation for the injuries received to the parties suing for the death of the deceased, they having the right to sue for the *value of the life* under the statute. Where there is pain and suffering between the injury and death, they are entitled to recover for that *also;* but the death in this case was instantaneous.'' (Italic ours.)

It would seem that the use of this word ''also'' meant in addition to the value of the life of the child, and the other elements of damages which are properly to be considered, without the same being pyramided. Of course, there is no way to measure with any reasonable degree of certainty the value of the life of a child, but the question is left to the sound discretion or determination of the jury as to what amount may be just. Compare the case of Belzoni Hardwood Co. v. Cinquimani, 137 Miss. 72, 102 So. 470; Avery v. Collins, 171 Miss. 636, 639, 157 So. 695, 158 So. 552, and Stevenson et al. v. Robinson et al., Miss., 37 So. (2d) 568.

In the instant case the proof on behalf of the plaintiffs discloses that the child endured much physical pain and suffering during the several hours intervening between the accident and its death, although the defendant and his

wife testified that it was never conscious after the accident.

It may be the case that the jury considered that the proof was not conclusive to show that the death of the child in question was not the result of an unavoidable accident, and that this view may have influenced the jury in assessing the damages at only $2,000. However, having found from a preponderance of the evidence that the defendant was guilty of negligence, and therefore was liable, the jury would not have been warranted in mitigating the damages, since a five-year-old child is prima facie incapable of contributory negligence. City of Vicksburg v. McLain, supra, and Westbrook v. Mobile & O. R. Co., 66 Miss. 560, 6 So. 321, 14 Am. St. Rep. 587.

But it is urged on behalf of the defendant that the mother of the child was guilty of negligence in permitting it to go out to the beach unattended, knowing that it would be likely to undertake to cross the highway in returning home. The mother explained her apparent negligence in this regard by telling the jury that she thought the child was playing on the courtyard nearby. At any rate, any failure on her part to properly safeguard the safety of the child would not be attributed to the other plaintiffs, and we are unable to say that such failure would constitute the direct or proximate cause of its death, where the jury was warranted in finding that the killing of the child could have been avoided by the defendant through exercise of reasonable care in keeping a constant lookout for pedestrians who may chance to use the highway.

In conclusion we deem it proper to say that while it is not in our province to determine, from the principles announced in the decisions hereinbefore cited, the approximate amount of damages that would be sufficient to adequately compensate the plaintiffs for the loss sustained by them, we feel impelled to say that a verdict for only $2,000 should not be permitted to stand

as being adequate damages for the death of a little five-year-old girl. We therefore affirm the case as to liability and reverse and remand the cause for another trial on the sole question of the damages.

Affirmed on liability, reversed and remanded on the question of damages only.