REED, et al. *v.* EUBANKS, ADMINISTRATRIX, ETC.

No. 40566          November 11, 1957          98 So. 2d 132

*Livingston & Fair*, Louisville, for appellants.

*Strong & Smith,* Louisville, for appellee.

KYLE, J.

This case is before us on appeal by J. T. Reed and John Hill, Jr., defendants in the court below, from a judgment of the Circuit Court of Winston County rendered in favor of Mrs. Mildred Eubanks, administratrix of the Estate of Sandra Jo Eubanks, deceased, plaintiff in the court below, for damages for the wrongful death of Sandra Jo Eubanks, minor child of Herbert Eubanks and his wife, Mrs. Mildred Eubanks, who was killed on June 4, 1956, when she was struck by a large GMC diesel truck, with trailer attached, which was being operated by John Hill, Jr., an employee of J. T. Reed.

The record shows that Sandra Jo Eubanks was eight years of age at the time of the fatal accident, and was living with her father and mother and her twelve-year old sister, Barbara Ann, in the home of J. B. Hendrick, about four miles east of the City of Louisville, on State Highway No. 14. She had left her home, which was located on the south side of the highway, a few minutes before the fatal accident and had gone across the highway to Triplett's Store to purchase some ice cream for herself and her sister. She purchased the ice cream and was returning to her home, when she was struck by the oncoming truck which was proceeding eastwardly after she

had crossed over the highway and was entering the driveway into the Hendrick's residence property.

The plaintiff charged in her declaration that the driver of the truck was negligent in that, (1) he negligently failed to keep a proper lookout for other persons on or near the highway in front of him; (2) he negligently failed to operate his vehicle at a rate of speed which would have enabled him to stop within the range of his vision; (3) he negligently failed to beep his truck and trailer under proper control; (4) he negligently operated the truck and trailer with improper and inadequate brakes; (5) he was driving the truck at a high and dangerous rate of speed, greatly in excess of 45 miles per hour; and (6) he negligently caused his truck to swerve off the highway and run into and against Sandra Jo while she was in the driveway returning to her home.

The defendants in their answer denied the charges of negligence set forth in the plaintiff's declaration, and by way of affirmative defense averred that the plaintiff's decedent ran from behind a parked truck in front of Triplett's Grocery Store into and across the highway, and the driver of the truck did not see her until she was on the paved portion of the highway immediately in front of his truck, and that the driver of the truck did everything possible for him to do to avoid striking her after he saw her on the highway.

The case was tried at the January 1957 term of the court, and at the conclusion of the evidence the defendants requested a peremptory instruction which the court refused to grant. The case was then submitted to the jury, and the jury returned a verdict for the plaintiff for the sum of $40,000. The defendants filed a motion for a new trial, which was overruled, and a judgment was duly entered in favor of the plaintiff for the amount of the verdict.

The first point argued by the appellants' attorneys as ground for reversal of the judgment is that the court

erred in refusing to grant the peremptory instruction requested by the defendants at the conclusion of all the evidence. It is therefore necessary that we give a brief summary of the testimony of the witnesses, who testified on behalf of the respective parties.

The plaintiff's evidence consisted mainly of the testimony of John Hill, Jr., the driver of the truck, who was called to testify as an adverse witness, and the testimony of F. J. Falgout and Travis Mitchell, who were standing a few feet north of the highway, in front of Triplett's store, at the time of the accident.

Hill testified that the truck that he was driving was a GMC 5-ton diesel truck, with a lowboy trailer attached to it. The truck was a 4-wheel truck, and the truck and trailer were owned by J. T. Reed and were used in hauling heavy road building equipment. The trailer had no service brakes on it at the time of the accident. Hill stated that, when he was about 400 feet from the store, he saw Jack's Cookie truck standing in front of the store, and he saw another truck approaching from the east. But he did not see the little girl standing in front of the store near the highway; and he saw no men standing out there. When he got within 250 feet of the store the truck approaching him from the east was about in front of the store, but he did not see the little girl or any men standing between the Cookie truck and the highway. It was not until he got within 150 or 175 feet of the entrance to the Hendrick's driveway, that he first saw the little girl on the pavement close to the center line of the highway. The west-bound truck, which was a bob truck with a van-type bed on it, was about half way between him and the driveway at that time. Hill stated that, when he saw the little girl in the middle of the highway, he pulled his truck to the right and applied his brakes, and lost control of the truck when it ran into a culvert on the south side of the highway. On direct examination by his own attorney, Hill stated that he was driving about 40 miles an

hour as he approached Triplett's store, and that the brakes on his truck were in good condition. He stated that, when he applied his brakes and took to the ditch, he was thrown from under the steering wheel against the front end of the cab, and was knocked out.

F. J. Falgout testified that he was sales supervisor of Jack's Cookies, and that he and Travis Mitchell, a salesman for Jack's Cookies, had arrived at Triplett's store only a few minutes before the accident, and had parked their truck about 15 feet from the store and 20 or 25 feet off the highway. They saw the little girl come out of the store with two ice cream sticks or cups in hand and walk up to the highway. A truck was approaching from the east and sounded its horn, and the little girl stopped about six feet from the edge of the black top and waited there until the truck had passed. She was about 18 or 20 feet from the Cookie truck at that time. After the west-bound truck had passed and had got about 150 or 200 feet down the highway the little girl started to cross the highway. Falgout heard the screeching of brakes and tires skidding on the pavement, and saw Hill's trailer truck running off the south side of the road. The truck hit a culvert on the south side of the road and ran across the ditch and struck the little girl after she had reached the entrance to the Hendrick's driveway and was approximately eight or ten feet from the pavement. The child was knocked 20 or 25 feet into the air. There was a fog of dust as the truck proceeded eastwardly up the slope into the Hendrick's yard and hit a tree several feet east of the driveway. Falgout stated that he saw the truck from the time he heard the screeching of the brakes until it reached the driveway, and in his opinion the truck was moving at a rate of speed of 50 miles an hour or more. He stated that the west-bound truck had passed the trailer truck and was not visible at all when the accident happened.

Travis Mitchell testified that he saw the little girl come out of the store with the ice cream in her hand and walk toward the highway. Mr. Falgout told her to stop, as another truck was approaching from the east. She stopped nine or ten feet from the pavement. She was standing south of the Cookie truck and in plain view of a motorist approaching along the highway. The westbound truck passed the store, and the next thing Mitchell heard was the skidding of Hill's truck which was coming from the west. The two trucks had passed each other when he heard the sound of the skidding on the pavement. The little girl had crossed over the highway and had gone eight or ten feet when she was hit by the truck which Hill was driving. Mitchell stated that his view was obscured by a cloud of dust at the time the truck actually hit the child, and he did no see the truck hit her. He estimated the rate of speed at which Hill was driving when he applied the brakes at 55 or 60 miles per hour. On cross-examination Mitchell stated that after the child came out of the store Mr. Falgout advised her to wait until the truck which was approaching from the east had passed, and the child waited until the truck had passed. Mr. Falgout then told her to go on across the road. After she got on the pavement Mr. Falgout called to her and told her to "run" before something came.

Wayne R. Miley, a state highway patrolman who arrived at the scene of the accident about 15 minutes after it happened, testified that the skidmarks on the pavement showed that the truck had skidded 31 feet before it left the pavement. The distance measured from the point where the truck left the pavement to the center of the Hendrick's driveway was 145 feet. The total distance from the point where the skidmarks began on the highway to the center of the driveway leading into the Hendrick's yard was 176 feet. Miley stated that the truck, after crossing the driveway, had run into a tree, and knocked the tree out of the ground, roots and all, and

the tree was fastened underneath the trailer when he arrived at the scene of the accident. Th distance from the place where the tree had been pulled out of the ground to the back of the trailer was 17 feet and the distance from the back end of the trailer to the center of the driveway was 92 feet. The tree measured three feet around it close to the roots.

John Henry White, who was riding in the truck with John Hill, Jr., at the time of the accident, was the only witness who was called to testify in behalf of the defendants. White testified that he was looking back at the trailer on the truck as Hill approached Triplett's store, and that he was thrown against the windshield of the cab when Hill applied his brakes. When he looked up he saw the little girl about the center line of the highway, and there was another truck between them and the little girl; Hill took to the ditch and lost control of the truck; and when the truck struck the tree in Hendrick's yard White and Hill both were thrown out of the truck. White stated that Hill was traveling at a rate of speed of about 40 miles per hour at the time he applied his brakes. On Cross-examination White stated that the trailer weighed several tons and was not equipped with service brakes; that if it had been equipped with service brakes, it would have made it easier to control; and that it would have been much safer to have had service brakes on the trailer.

The first point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court, as stated above, is that the court erred in refusing to grant the peremptory instruction requested by the defendants. It is argued that Hill was driving at a rate of speed of approximately 40 miles per hour, which was a lawful rate of speed, and that Hill did everything humanly possible to avoid striking the child; that Hill's view was obstructed by the west-bound truck with a high closed-in body, which was approaching him from the opposite direction; and that Falgout's negligence in direct-

ing the child to proceed across the highway immediately after the west-bound truck had passed, notwithstanding the rapid approach from the west of Hill's truck and trailer, was the sole proximate cause of the death of the decedent.

But we think there is no merit in this contention.

■■ ■ Section 8176, Code of 1942, provides that no person shall operate a truck or truck-trailer on the highways of the state at a speed faster than 45 miles per hour. Section 8249, sub paragraph (a)4, provides that every trailer of the kind that we have here shall be equipped with service brakes upon all wheels. The law requires that every driver of a motor vehicle shall keep his motor vehicle under proper control and shall keep a constant lookout for pedestrians. Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665; Coker v. Five-Two Taxi Service, Inc., 211 Miss. 820, 52 So. 2d 356, Suggestion of Error overruled, 52 So. 2d 835.

The witness Falgout testified that he saw the trailer-truck from the time he heard the screeching of the brakes until it reached the driveway, and in his opinion the truck was traveling at a rate of speed of 50 miles per hour or more. The witness Mitchell testified that he had been driving an automobile for 15 years, and made his living that way, and that in his opinion Hill's truck was traveling at the rate of 55 or 60 miles per hour when he applied his brakes. It is true that Hill testified that when he first saw the child on the highway he was only 175 feet from her, that the west-bound truck was about half way between him and the child at that time, and that he did everything that he could do to avoid striking the child after he saw her. But Falgout testified that the child did not start across the highway until the west-bound truck had gotten about 150 or 200 feet down the highway, and that when he heard the squeaking of the brakes on Hill's truck and looked back and saw the truck approaching the west-bound truck had passed out of

sight. If the testimony of the plaintiff's witnesses is to be accepted as true, Hill's failure to see the child crossing the highway until he was only 175 feet from her was not due to the fact that his vision was obstructed by the approach of the west-bound truck, but was due to his own failure to maintain a proper lookout. Hill admitted that there were no service brakes on the trailer.

Juries are empaneled to try disputed issues of fact; and whether Hill was driving at an excessive rate of speed, or at a rate of speed in excess of 45 miles an hour; whether he was negligent in failing to maintain a proper lookout for other persons on the highway, and in failing to observe the movements of the 8-year old child as she crossed over the highway in front of Triplett's store, in time to avoid injuring her; and whether he was negligent in failing to maintain proper control of his vehicle after he saw, or by the exercise of reasonable care, should have seen, the child on the highway; and whether Hill's negligence, if any, was the proximate or a contributing cause of the death of the child, were questions of fact for the jury to decide; and there was no error in the court's refusal to grant the peremptory instruction requested by the defendants.

It is next argued that the court erred in refusing to grant an instruction requested by the appellant which appears on page 132 of the record. But there was no error in the court's refusal to grant that instruction. It would have been improper for the court under the facts in this case to have instructed the jury that the defendant Hill was confronted with "peculiar circumstances", at the time he saw the child on the highway. The circumstances were not "peculiar." They were only such circumstances as operators of motor vehicles are confronted with almost every day, as they see pedestrians cross paved highways in front of them. The instructions in the form requested would have had a tendency to confuse and perhaps mislead the jury; and such instructions

should not be given in any case. But if the instruction had not been subject to the criticism which we have made of it, the failure of the court to grant the instruction would not have constituted reversible error for the reason that the principles of law attempted to be embodied in the instruction were contained in another instruction which the court had already given and which appears on page 125 of the record. ■■ ■ This Court has held in numerous cases that it is not error for the trial judge to refuse to grant an instruction embodying the same principles of law as those contained in another instruction already given. Jefferson Funeral Home v. Pinson, 219 Miss. 427, 69 So. 2d 234.

■■ ■ It is next argued that the court erred in granting to the plaintiff an instruction which appears on page 114 of the record, in which the court instructed the jury that if they should find for the plaintiff, in calculating the amount of damages which the plaintiff was entitled to recover, they might consider as a proper element of damages "the present net cash value of the life of the deceased, if any, at the time of her death."

It is argued that the instruction was erroneous in that it took away from the jury the right to consider the question of the cost to Sandra Jo's parents of the support, maintenance and education of the child had she lived. But this Court has held in the two very recent cases, Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665, and Bush et al. v. Watkins et al., 224 Miss. 238, 80 So. 2d 19, that the present "net value of the life of the deceased" is a proper element of damages which may be recovered in an action of this kind for the wrongful death of a minor child, and there was no error in the court's granting the above mentioned instruction.

■■ ■ Finally it is argued that the court erred in refusing to grant the appellants a new trial on the ground that the verdict in the case was so excessive as to represent passion, prejudice and bias on the part of the jury.

The appellants' attorneys argue in support of this contention that the evidence in the case was not such as to justify the award of punitive damages, and that the trial judge refused an instruction which would have permitted the jury to award punitive damages; that the decedent was killed instantly and, therefore, there could have been no recovery for mental or physical pain, suffering and anguish; and that the verdict of the jury for the sum of $40,000 not only shocks the conscience, but carries with it the obvious conviction that emotion and sympathy was the fountain head from which it flowed.

It may be readily conceded that the amount of the verdict is larger than the verdicts that have been rendered in most cases that have come before this Court which involved the death of a minor child, and in which punitive damages have not been allowed. But there is no exact yardstick, or measurement, which this Court may use as a guide to determine the size of verdicts which should be permitted to stand in cases of this kind. Each case must depend upon its own facts, and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is so excessive as to indicate that the jury was animated by passion, prejudice, or corruption. J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779, and cases cited. See also Peerless Supply Co., Inc., v. Jeter, 218 Miss. 61, 65 So. 2d 240, and Bush et al. v. Watkins et al., supra.

■■ ■ The statute provides that in an action for injuries producing death ''the party or parties suing shall recover such damages as the jury may determine to be just taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.'' Section 1453, Miss. Code of 1942, Anno. In view of the age of the decedent, her life expectancy, and the elements of dam-

ages which the jury was permitted to consider, we cannot say that the amount awarded was the result of passion, prejudice or corruption.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.*, and *Hall, Arrington* and *Gillespie, JJ.*, concur.