573 So.2d 740 (1990)
Gilbert Hunter JONES, as Administrator of the Estate of Marvin Earl Jones, Deceased, and as Personal Representative
v.
Kim Allen SHAFFER and Arthur F. Cain.
No. 07-CA-59255.
Supreme Court of Mississippi.
December 19, 1990.
Rehearing Denied January 23, 1991.
*741 J. Niles McNeel, McNeel & Ballard, Louisville, for appellant.
David L. Sanders, Mitchell McNutt Threadgill Smith & Sams, Columbus, Peter W. Cleveland, Biloxi, David T. Wilson, Jr., Thomas Y. Minniece, Singley Minniece Hamill, Wilson & Mitts, Louisville, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Gilbert Hunter Jones, administrator of the estate of Marvin Earl Jones, deceased, filed suit in the Circuit Court of Choctaw County against Kim Allen Shaffer, Hugh Shaffer, R.L. Jefferies Trucking Co. and Arthur F. Cain, for the wrongful death of Marvin Earl Jones (Jones) as a result of a truck collision. The jury returned a verdict against Kim Shaffer and Arthur Cain in the amount of $4,568.78, the funeral expenses of Jones.[1] The administrator has appealed the judgment of the lower court to this Court and presents four issues for decision. Arthur F. Cain has cross-appealed and raises two issues in his behalf.

FACTS
The facts favorable to the appellant follow. On October 28, 1983, Kim Shaffer, hereinafter referred to as Shaffer, was driving an "18-wheeler" truck for his father, Hugh Shaffer, d/b/a K & R Trucking. Riding in the truck with Shaffer was a passenger, his friend, Jones. Shaffer was driving in a northerly direction on Highway 9 with Jones asleep in the cab of the truck. The truck was traveling at 55 miles per hour as it went over a hill just south of the Natchez Trace Parkway.
According to Shaffer, he saw a pick-up truck drive out of Swindle's Grocery approximately seven or eight hundred feet in front of him and turn north on Highway 9. Upon seeing the pick-up truck, Shaffer did not slow his truck down, intending to pass the pick-up on the left. As Shaffer approached the truck, he became aware that it was sitting still in the road, and he also saw another vehicle. It was approaching in the south bound lane in which Shaffer was attempting to pass the pick-up truck. Being unable to stop, and, in an effort to avoid hitting the pick-up truck in the rear, Shaffer drove the "18-wheeler" truck off the road and into a ditch where it struck a tree. In the crash that resulted, Shaffer was thrown free from the wrecked truck, but Jones was pinned inside the cab. Soon afterwards, the cab of the "18-wheeler" truck was engulfed in flames. Jones' body was burned and charred beyond recognition.
The pick-up truck, which pulled out from Swindle's Grocery and proceeded north on Highway 9 in front of the Shaffer's "18-wheeler" truck, was driven by Arthur F. Cain. He testified that he had driven off the Natchez Trace Parkway, and, discovering that he turned at the wrong exit, had stopped his truck in the north bound lane of Highway 9, waiting for an approaching car to pass so he could make a left turn back on to the Natchez Trace. He heard the screeching tires of an "18-wheeler" coming up behind him. Cain testified that his brake lights were not working at the time of the accident but that his left directional signal was operating and had been turned on. The weather was clear, the sun was shining and the accident occurred at approximately 1:00 p.m.
Jones was twenty-two years of age, unmarried and without children or dependents. His parents predeceased him and *742 there survived Jones five brothers and three sisters.
LAW
ISSUES
I. FAILURE OF THE JURY TO RETURN ANY DAMAGES FOR THE NET CASH VALUE OF THE DECEDENT'S LIFE EXPECTANCY.
II. FAILURE OF THE JURY TO RETURN ANY DAMAGES FOR PAIN AND SUFFERING FOR THE DECEDENT.
III. FAILURE OF THE JURY TO RETURN ANY DAMAGES FOR LOSS OF COMPANIONSHIP AND SOCIETY.
IV. FAILURE OF THE JURY TO RETURN ADEQUATE DAMAGES AS A MATTER OF LAW.
The court submitted elements of damages, i.e., (1) funeral expenses of Marvin Earl Jones; (2) the net cash value, life expectancy of Marvin Earl Jones; (3) pain, suffering and mental anguish; (4) loss of companionship of Marvin Earl Jones to his brothers and sisters. The jury returned a verdict for the plaintiff in the amount of $4,568.78, the exact amount of the funeral expenses of Jones. The verdict of the jury is affirmed on the issue of funeral expenses.

NET CASH VALUE
Dr. Paul Oliver, an expert in the field of economics, testified for the plaintiff. He was the only such expert to testify in the case. According to Dr. Oliver, the average work life expectancy of a 22 year old male person is 41 years. In computing a person's lost net cash value, a personal consumption factor must be taken into account. In his direct testimony, he indicated that the decedent's personal maintenance consumption allowance would be twenty-six per cent, which is for a two person family and the highest percentage shown by the tables of the Department of Labor. Using that rate, Dr. Oliver testified for the last full year the decedent worked, he earned $9,900, which computed the present value of the decedent's lost income at $171,000.00. This did not take into account any taxes that might be paid during the decedent's life, had he lived.
On cross examination by Mr. Sanders, attorney for the defendant, Kim Shaffer, Dr. Oliver was asked to compute the decedent's lost income using 40% as the deceased personal consumption rate and Dr. Oliver arrived at the decedent's lost net income as $101,142.00. On further cross examination by the attorney for Jeffries' Trucking, Dr. Oliver was asked to assume that the decedent's personal consumption rate was 67% and Dr. Oliver arrived at the decedent's lost net income at $70,495.00. It is incredible that the verdict ignored and did not respond favorably to this element of damages.

PAIN, SUFFERING AND MENTAL ANGUISH ON THE PART OF MARVIN EARL JONES
Marvin Reed testified that he was inside Swindle's Grocery when the accident occurred; that he immediately ran to the wrecked truck and that while he was standing by the driver's side of such truck heard someone, whom Reid was of the opinion was in the cab of the truck, say "Help me". He did not see who made the statement nor did he walk around to the passenger side of the wrecked truck to be sure that the voice came from inside the cab, and shortly thereafter, the truck was engulfed in flames.
John Steadman testified that he was eating lunch on the porch of Swindle's Grocery and observed the accident; that he ran down to the wrecked truck and, while standing at the rear of the truck, heard someone say, "Somebody get me out of here." He was of the opinion that it came from inside the truck.
Herman Morris was eating lunch with Reid at Swindle's Grocery. He ran down to the wrecked truck when he heard it impact the tree and, while standing on the truck with his head in the window of the cab, Morris heard someone say, "Somebody help me. Get me out of here." He was *743 sure that the voice came from inside the truck. He tried to get to the person inside the truck but jumped off it as the truck began to tremble and the truck exploded into flames just as he got a few steps away.
Kim Shaffer, driver of the eighteen wheeler truck, in order to avoid hitting Cain in the rear, ran off the highway into a ditch and struck a tree. In the crash, Shaffer was thrown free from the wrecked truck and some distance away. It is undisputed that Marvin Earl Jones was the only individual inside the cab of the truck and the evidence is overwhelming that he was asking for help and was alive.

LOSS OF COMPANIONSHIP OF MARVIN EARL JONES TO HIS BROTHERS AND SISTERS
Gilbert Jones, brother of the decedent, testified that Marvin Earl Jones left surviving him five brothers and three sisters; that Jones' parents predeceased him and Jones was not married nor did he have any children; that the Jones family, brothers and sisters, was a close family; and that the decedent lived in and kept up the family home and place.
Norma Rae Ratcliff, sister of the deceased, testified on behalf of all members of the family as to the closeness of the Jones family.
Although each member of the family should have been available as a witness and could have, or should have, testified to the loss of companionship and society, this element of the damages is undisputed.
* * * * * *

DISCUSSION
It is elementary that when a jury's verdict for damages is against the overwhelming weight of the evidence or is the result of bias, passion and prejudice or the verdict does not respond to the uncontradicted evidence and is inadequate, the Court will reverse and remand for a new trial. Clark v. Columbus and Greenville Railway Company, 473 So.2d 947 (Miss. 1985); Dickey v. Parham, 331 So.2d 917 (Miss. 1976); Campbell v. Schmidt, 195 So.2d 87 (Miss. 1967); Burlingame v. Southwest Drug Stores of Mississippi, 203 So.2d 74 (Miss. 1967); Green v. Hatcher, 236 Miss. 830, 105 So.2d 624 (1958).
The case of McGowan v. Estate of Wright, 524 So.2d 308 (Miss. 1988) is distinguished from the case at bar. There the evidence was uncontradicted and undisputed that there were no damages for loss of companionship, pain and suffering and net case value of the decedent's income.
We are of the opinion that the lower court erred in declining to grant the motion for new trial on the issue of damages alone, excepting the issue of funeral expenses, which is affirmed.[2]

*744 CROSS APPEAL
Appellee, Arthur F. Cain, cross appeals and asserts the following issues:
I. THE VERDICT OF JURY AS TO CAIN WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. SEVERAL INSTRUCTIONS AND RULINGS OF THE COURT WERE ERRONEOUS IN CALCULATING TO MISLEAD THE JURY AS TO THE NECESSITY OF CAUSAL CONNECTIONS.
We are of the opinion that the cross appeal is without merit and the judgment of the lower court is affirmed as to liability and funeral expenses on the cross appeal.
The judgment of the lower court is affirmed as to liability and funeral expenses, is reversed and remanded on the issues of damages, and is affirmed on cross appeal.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART ON DIRECT APPEAL. AFFIRMED ON CROSS-APPEAL.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ROBERTSON, J., specially concurs with separate written opinion joined by HAWKINS, P.J., and SULLIVAN, J.
ANDERSON, J., not participating.
ROBERTSON, Justice, concurring:
In McGowan v. Estate of Wright, 524 So.2d 308, 311-13 (Miss. 1988), five Justices of this Court recognized that, as a matter of the correct reading of Miss. Code Ann. § 11-7-13 (Supp. 1990), a plaintiff in a wrongful death action damages could recover for loss of the value of living. An additional word or two may shore up the rationale for our action, and it is appropriate that we do so here, as the matter will surely arise on remand.
It cannot be overemphasized that we are construing a statute. Section 11-7-13 mandates that the jury award such damages as are "just" and including "all damages of every kind of the decedent." Over the years, we have read the statute grudingly and, its language to the contrary notwithstanding, have historically allowed recovery only for the present net cash value of the decedent's life expectancy, plus pain and suffering. See, e.g., Sheffield v. Sheffield, 405 So.2d 1314, 1318 (Miss. 1981); Reed v. Eubanks, Admx., 232 Miss. 27, 40, 98 So.2d 132, 138 (1957); Bush v. Watkins, 224 Miss. 238, 243-44, 80 So.2d 19, 21-22 (1955); Gordon v. Lee, 208 Miss. 21, 34, 43 So.2d 665, 667 (1949). This reading implicitly assumes that the average person derives no value from living. As has been noted, "This cannot be right, and it results in a systematic underestimation of damages in wrongful death cases." Landes & Posner, The Economic Structure of Tort Law 187 (1987); see also Posner, Economic Analysis of Law 182 (3d ed. 1986).
Popular legal culture has awakened of late but rhetoric exceeds reason in the literature. Gillen & Olson, Economic and Legal Defenses Against Claims for Hedonic Damages, 33 FOR THE DEFENSE 18 (January 1991); Nordstrom, Section 1983 and Hedonic Damages: A Constitutional Right to Pleasure?, 57 DEF.COUNS.J. 180-88 (April 1990); Marcotte, Lost Pleasure Suit: First Personal Injury Case to Award Hedonic Damages Settles (Ferguson v. Mucci), 76 A.B.A.J. 30 (April 1990); Fearon, Hedonic Damages: A Separate Element in Tort Recoveries, 56 DEF. COUNS.J. 436-439 (October 1989); Moore, Loss of Enjoyment of Life; an Emerging Theory of Nonpecuniary Damages, 25 TRIAL 58-61 (September 1989); Goldstein, Courts Continue to Examine Hedonic Damages, 31 FOR THE DEFENSE 11 (June 1989); Staller, Placing a Value on the Enjoyment of Life, 31 FOR THE DEFENSE 8-10 (June 1989); Blodgett, Hedonic Damages: A Price on the Pleasures of Life, 71 A.B.A.Journ. 25 (Feb. 1985); Goldstein, Hedonic Damages: Awards for Loss of Life and its Pleasures 30 DEFENSE 6 (Nov. 1988); Barrett, New Legal Theorists Attach a Dollar Value to the Joys of Living, Wall St. Journal, Dec. 12, 1988, at A1, col. 1.
*745 Connecticut's wrongful death statute also entitles plaintiff to "just damages," and Katsetos v. Nolan, 170 Conn. 637, 657, 368 A.2d 172, 183 (1976) reads "just damages" as including
... compensation for the destruction of her capacity to carry on and enjoy life's activities in a way she would have done had she lived.
New York's rejection of this view in McDougald v. Garber, 73 N.Y.2d 246, 536 N.E.2d 372, 538 N.Y.S.2d 937 (1989), has been deservedly savaged. See Note, Damages  Loss of Enjoyment of Life, 103 Harv.L.Rev. 811 (1990). Sherrod v. Berry, 629 F. Supp. 159, 163-64 (N.D.Ill. 1985), aff'd, 827 F.2d 195, 205-206 (7th Cir.1987) offers valuable elucidation as it holds admissible opinion testimony of an economist who projected the value of a lost human life.
Our old approach to Section 11-7-13 arose in another world and is inadequate twofold: first, it assumes quite wrongly that the person who has been killed would obtain no (non-pecuniary) utility from continuing to live beyond his income production. Little reflective thought is required to recognize that this is simply not so. There is at the very least a social and psychological (i.e., non-pecuniary) value to life over and above any pecuniary value. Put otherwise, "Present net cash value is just part of the utility to the deceased of his life expectancy, had he lived." McGowan, 524 So.2d at 312 (Miss. 1988) (Robertson, J., dissenting from denial for rehearing); Cramer, Loss of Enjoyment of Life as a Separate Element of Damages, 12 Pacific L.J. 965 (1981).
Second, the thoughtful literature of late convincingly demonstrates that the attack on non-pecuniary damages, e.g., pain and suffering, is misdirected.[1] Posner, supra, at 182 (3d ed. 1986); Comment: Wrongful Death Damages in California: On The Brink of Full Compensation, 24 San Diego L.Rev. 1003, 1013-22 (1987). Compensating full non-pecuniary losses is particularly important where pecuniary losses are small, that tort law's deterrent maintain its credibility. The illustration often offered is the claim for the wrongful death of a young child. Shavell, Economic Analysis of Accident Law 134 (1987). The case of a bachelor in his early twenties would seem as apt.
When it fails to compensate that loss, our law imparts incorrect (and generally inadequate) incentives to potential injurers, given loss distribution as the function of our tort law and allocative efficiency as a value to be pursued. The near unanimous opinion today is that, generally speaking, "injurers will act optimally if liability equal actual losses." Shavell, at 128; see also, Posner, supra at 176, 182; O'Hara, Hedonic Damages For Wrongful Death: Are Tortfeasors Getting Away With Murder? 78 Geo.L.J. 1687, 1688-93 (1990); but see Note, An Economic Analysis of Tort Damages For Wrongful Death, 60 N.Y.U. L.Rev. 1113, 1115, 1119-20 (1985). The aggregate social costs of accidents will be held to their optimal level when the injurers are made to pay to victims full actual losses. Actual losses include both pecuniary and non-pecuniary losses. Landes and Posner, supra, at 186; Shavell, supra, at 133-34. O'Hara, supra, at 1687. All of this fits nicely within Section 11-7-13's "all damages of every kind."[2]
*746 Our law has long recognized recovery for diminution of the joys of living. Libel, slander and, more recently, invasion of privacy award damages on this view. Candebat v. Flanagan, 487 So.2d 207 (Miss. 1986) (recognition of distinction available for damages to both proprietary and emotional interests in invasion of privacy actions). See also, Wrought Iron Range Co. v. Boltz, 123 Miss. 550, 558, 86 So. 354, 355 (1920); Newson v. Henry, 443 So.2d 817, 821 (Miss. 1983). Emotional distress damages may only be awarded on this premise. First National Bank v. Langley, 314 So.2d 324, 329-39 (Miss. 1975).
Reasoning by analogy further supports the case for wrongful death damages equal to full actual losses. Torts are restructured involuntary transactions, or ex ante contracts, if you will. To be labeled "just," a transaction (voluntary or involuntary) must make at least one party to it better off than before (as that party defines for himself "better off") and no one worse off. Obviously, if the injured person is not given full compensation, he has been made "worse off" by the transaction  the outcome of which by definition we label unjust. See Murphy and Coleman, The Philosophy of Law: An Introduction to Jurisprudence 212-218 (1984); Posner, supra, at 11-15. This theory supports the award of damages equal to full actual losses in personal injury action.
A person tortiously injured, and permanently disabled in consequence, may recover for the diminished joy of living. See Thompson v. National Railroad Passenger Corp., 621 F.2d 814, 824 (6th Cir.1980), (pain and suffering, permanent injury, and loss of enjoyment of life each represent separate losses which victim incurs); Dyer v. United States, 551 F. Supp. 1266, 1281 (W.D.Mich. 1982) (one who sustains injury as result of wrongful conduct of tortfeasor is entitled to compensation for loss of enjoyment of life; loss of taste and smell recoverable); Kirk v. Washington State University, 109 Wash.2d 448, 746 P.2d 285 (1987) (jury could consider loss of enjoyment of life as damages in action where college cheerleader was injured and unable to pursue her interest and abilities in ballet because of her injuries); Atwood v. Lever, 274 So.2d 146, 149 (Miss. 1973). Justice and efficiency demand no less. We admit "a-day-in-the-life" movies on the premise that they are relevant to the plaintiff's quantum of recoverable damages. Rule 401, Miss.R. Ev.; Trapp v. Cayson, 471 So.2d 375, 380-82 (Miss. 1985). If this view does not hold in wrongful death cases, our law gives off unfortunate incentives. We invite the tortfeasor who runs over a pedestrian to back up and do it again and be sure his victim is dead.
At common law there could be no recovery for wrongful death and for years the rule was severely criticized. See Moragne v. States Marine Lines, 398 U.S. 375, 379-86, 90 S.Ct. 1772, 1777-80, 26 L.Ed.2d 339, 345-49 (1970). No less than the late Dean Prosser commented, "From the defendant's point of view it was cheaper to kill a person than to scratch him." Prosser, Torts § 125 (5th ed. 1984). See also, Milton v. Cary Medical Center, 538 A.2d 252, 253 (Me. 1988); Stiffelman v. Abrams, 655 S.W.2d 522, 531 (Mo. 1983); Fure v. Sherman Hospital, 64 Ill. App.3d 259, 21 Ill.Dec. 50, 58, 380 N.E.2d 1376, 1384 (1978); Speiser, Recovery For Wrongful Death § 1:5 (1966). Section 11-7-13 decrees that even the modern dress of this inequity will never again be so in this state.
HAWKINS, P.J., and SULLIVAN, J., concur with this opinion.
NOTES
[1] The Choctaw County Circuit Court held that defendants Hugh Shaffer, doing business as K & R Trucking, and R.L. Jefferies Trucking Company were not liable for Jones' death in the case at bar under ICC regulations and subsequently discharged them from the suit as a matter of law.
[2] Miss. Code Ann. § 11-7-13 (Supp. 1990) provides:

In such action the party or parties suing shall recover such damages as the jury may determine to be just taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
This statutory language has been held to include: the present net cash value of the life expectancy of the decedent; the loss of society and companionship of the decedent; the pain and suffering experienced by the deceased between the time of the injury and the subsequent demise and punitive damages. McGowan v. Estate of Wright, 524 So.2d 308, 311 (Miss. 1988) (citing Jesco, Inc. v. Whitehead, 451 So.2d 706, 710 (Miss. 1984); Sheffield v. Sheffield, 405 So.2d 1314, 1318 (Miss. 1981); Dickey v. Parham, 331 So.2d 917, 918-919 (Miss. 1976); Thornton v. Ins. Co. North America, 287 So.2d 262, 265 (Miss. 1973); Scott v. K-B Photo Service Inc., 260 So.2d 842, 844 (Miss. 1972); Boyd Constr. Co. v. Bilbro, 210 So.2d 637, 643 (Miss. 1968)).
Many times plaintiffs ask for an instruction in the exact wording of the statute above and it has been approved by the Court. It was not requested nor submitted in the present case and the elements of damages were limited to the four issues mentioned and discussed.
Many legal authorities have written on the theory of hedonic damages for the intrinsic value of life, and at least one state, Connecticut, has responded. Zarrelli v. Barnum Festival Soc., Inc., 6 Conn. App. 322, 505 A.2d 25 (1986); Katsetos (Estate of Katsetos) v. Nolan, 170 Conn. 637, 368 A.2d 172 (1976); Chase v. Fitzgerald, 132 Conn. 461, 45 A.2d 789 (1946).
The issue was not raised in the lower court and is not before this Court. Therefore, this opinion does not address the issue.
[1] See American Law Institute, Compensation and Liability for Product and Process Injuries 206-218 (Prelim.Draft No. 3, Aug. 15, 1990) ("The Uneasy Case for Pain and Suffering").
[2] James Brady has considered these matters in a recent issue of the Mississippi Law Journal. Comment, Hedonic Damages, 59 Miss.L.J. 495 (1989). Though useful in thought and resources, Mr. Brady's work concludes

Although the wrongful death statute in Mississippi provides for recovery of any and all damages, it is imperative to decide if an award for loss of life's pleasures would fulfill the purpose of our legal system. In this case, it would not. The purpose of our legal system is to make the plaintiff whole by putting him in the same position he would have been in had the injury not occurred. Compensation for loss of life's pleasures does not accomplish this purpose and therefore would violate the underlying policy of our legal system.
Comment, 59 Miss.L.J. at 512. This is dead wrong. I would have thought it clear our legal system has no underlying policies with power to bend a constitutionally valid statute.