¶ 15. In my judgment, the majority errs in concluding that Byrd's[2] default admissions, regarding the extent of Bowie's damages, vitiates Bowie's obligation to prove Bowie's medical malpractice case within the legal malpractice case that Bowie instituted against Byrd. Therefore, I respectfully dissent. I would reverse and remand this case for a trial on the merits, because, for the reasons that I will proceed to explain, the grant of summary judgment was inappropriate.
 ¶ 16. In affirming the trial court, the majority relies upon Sawyer v. Hannan, 556 So.2d 696 (Miss. 1990). In my view, this reliance is misplaced. There is nothing inSawyer that assists us in resolving the issue presented. Sawyer is not a legal malpractice case, and there is nothing in Sawyer indicating that the judgment rendered there is predicated upon a party's default admission of unliquidated damages. Sawyer stands for the simple proposition that, in a proper case, default admissions under Rule 36 of the Mississippi Rules of Civil Procedures may, without further proof, be sufficient for entrance the of a money judgment against the defaulting party. Here, before we can resolve the ultimate issue of whether summary judgment was properly granted, we must address two sub-issues. First, we must decide whether, in this legal malpractice case, a general admission of damages, which admittedly includes unliquidated damages, may be accepted as Bowie's *Page 1208 
measure of damages without actual proof of damages. Second, we must decide whether a judgment for the amount of damages deemed admitted was lawfully rendered against Byrd even though Bowie had not proved liability against the medical defendants in the underlying medical malpractice case which he mishandled.
 ¶ 17. This action arises out of the dismissal with prejudice of a medical malpractice action filed by Byrd on behalf of Willie and Charles following the death of their mother, Lois Brown.[3] In the medical malpractice action, Bowie sued Montfort Jones Hospital, Kosicusko Medical Clinic, and several physicians, alleging that the defendants were negligent in failing to provide Lois with the minimal level of care after she reported to Montfort Jones following a seizure, thereby causing her death. Bowie v. Montfort Jones Mem'lHosp., 861 So.2d 1037, 1039 (¶¶ 2-3) (Miss. 2003). After Byrd failed to timely designate a medical expert, the trial court granted summary judgment for the Montfort Jones
defendants. On appeal, the Mississippi Supreme Court affirmed.Id. at 1039 (¶ 1).
 ¶ 18. Following the affirmance by the supreme court of the trial court's judgment in Montfort Jones, Bowie filed a legal malpractice action against Byrd. At the time of service of the complaint in the legal malpractice action, Bowie also served requests for admission upon Byrd. Byrd failed to answer the requests within thirty days as required by Rule 36(a) of the Mississippi Rules of Civil Procedure. The requests asked Byrd to admit, inter alia, that "[Bowie's] damages in the [MontfortJones] death [a]ction were $2,000,000; and the negligence of Byrd and Gibbs in the [Montfort Jones] action resulted in [Bowie] sustaining damages in the amount of $2,000,000."[4] After Byrd failed to respond to the requests for admission, Bowie filed a motion for partial summary judgment, which was granted as to the issue of negligence. The judge's order granting partial summary judgment as to Byrd's negligence was reviewed by the Mississippi Supreme Court via an interlocutory appeal. The supreme court affirmed. Byrd v.Bowie, 933 So.2d 899, 907 (¶ 29) (Miss. 2006) (ByrdI). Following the supreme court's affirmance on the negligence issue, Bowie filed a motion for summary judgment with the trial court, arguing that the Bowie "[p]laintiffs have established their claim of negligence against the Byrd defendants in this case in its entirety, including actualdamages proximately caused thereby, in the amount of $2,000,000." (Emphasis added). The trial court agreed and entered a final judgment against Byrd for two million dollars.
 ¶ 19. To recover in a legal malpractice claim, the plaintiff must prove by a preponderance of the evidence: (1) the "[e]xistence of a lawyer-client relationship[,] (2) [n]egligence on the part of the lawyer in handling [the matter] entrusted to him[, and] (3) [p]roximate cause of injury." Hickox v.Holleman, 502 So.2d 626, 633 (Miss. 1987).
 ¶ 20. There is no dispute that a lawyer-client relationship existed between Bowie and Byrd. Further, there is no dispute that Byrd's negligence in failing to timely designate a medical expert was the reason Bowie lost an opportunity to try and prove that the medical defendants in Montfort *Page 1209 Jones violated the standard of care owed to Lois and that that deviation was the proximate cause of her untimely death. The problem here is with the third element: proximate cause of injury. I now turn my focus to this element.
 ¶ 21. Bowie contends that the rulings in Byrd I
and in Montfort Jones undergird the trial court's grant of summary judgment against Byrd in the amount of two million dollars. Stated another way, the Bowie plaintiffs argue that the rulings in Byrd I and Montfort Jones
constitute the law of the case and that these rulings eliminate any genuine issue of material fact with respect to the third issue in this legal malpractice case, entitling them to the two million dollar judgment rendered by the trial court.
 ¶ 22. In the interlocutory appeal in Byrd I, the Mississippi Supreme Court was presented with three issues:
 (1) whether the trial court erred by granting partial summary judgment on the issue of negligence and by denying the motion to withdraw default responses to request for admissions, (2) whether the trial court erred by denying the motion to stay, and (3) whether the trial court erred by denying [a] motion to disqualify [Eddie J.] Abdeen [Bowie's attorney in Byrd I].
Byrd, 933 So.2d at 901 (¶ 4). It is the supreme court's holding with respect to the first issue that is pertinent to our inquiry. In resolving this issue, the supreme court found that the trial judge did not abuse his discretion in refusing to allow Byrd to withdraw the default responses and that Byrd's failure to timely designate an expert inMontfort Jones constituted negligence as a matter of law. Id. at 904-05 (¶¶ 14-18). Unfortunately, in discussing this issue, the court inadvertently used language that perhaps caused Bowie, as well as the trial judge and the majority, to erroneously believe that the court was holding that Byrd was liable to Bowie for damages, even though there had been no proof that Bowie would have recovered against the medical defendants but for Byrd's negligence. No doubt the confusion arose due to the language used by the Byrd
court in discussing whether expert testimony was required to prove that Byrd was negligent in failing to timely designate a medical expert. This is what the court said:
 In this case, the question becomes whether Bowie's claim of legal malpractice calls for expert testimony in order to establish that the Defendants breached their duty of care. . . . We find the facts in this case are analogous to the facts in Hickox. An attorney who fails to designate an expert by a court-mandated deadline and does not provide any reason for doing so, is negligent as a matter of law, as was the attorney in Hickox. Therefore, Bowie is entitled to partial summary judgment as to the Defendants' liability.
Id. at 905 (¶ 18) (emphasis added).
 ¶ 23. It is obvious, both from the context of the discussion and from the statement of the issues, that all the court was saying is that the Byrd defendants are legally bound for whatever damages Bowie may be able to prove, not that proof of medical negligence, proximate cause, and damages in the medical malpractice case was dispensed with.
 ¶ 24. Thus, the holding in Byrd I eliminated the need for Bowie, in the legal malpractice case, to prove by separate testimony, expert or otherwise, that Byrd was negligent for failing to designate a medical expert in Montfort Jones.Byrd I also established that, in the legal malpractice case, the Byrd defendants would not be able to withdraw their default admissions, which included an admission that Bowie *Page 1210 
was damaged in the amount of two million dollars. The effect of this admission on Bowie's obligation to prove within the legal malpractice case that Lois actually suffered damages at the hands of the medical defendants in Montfort Jones was not addressed in Byrd I. The issues of medical negligence, if any, proximate cause of Lois's death, and damages, which would have to be proven as the third element in Bowie's legal malpractice case against Byrd, were not before the court in either Montfort Jones or Byrd I.
Therefore, while I agree with Bowie that the rulings in these cases form the law of the case, they neither prove nor find that no genuine issue of material fact exists with respect to the medical negligence of the Montfort Jones defendants or to the proximate cause of Lois's death.[5] Stated another way, nothing in Montfort Jones or Byrd I
speaks to the issues of whether the Montfort Jones
defendants deviated from the standard of care owed to Lois, and if so, whether that deviation was the proximate cause of Lois's untimely death.
 ¶ 25. As stated, the Bowie plaintiffs are required, as a part of their legal malpractice case, to "show that but for [Byrd's] negligence, they would have been successful in the prosecution . . . of the underlying [medical negligence] action." Hickox, 502 So.2d at 634. It is true that the Bowie plaintiffs were injured in the sense that Byrd's negligence caused them to lose their right to pursue their medical malpractice lawsuit against the Montfort Jones
defendants. However, it is not enough to show that the Bowie plaintiffs lost the opportunity to prosecute their medical malpractice case. In order for the summary judgment to stand, there must be uncontradicted medical expert proof in the record that the Montfort Jones defendants deviated from the standard of care owed to Lois and that that deviation was the proximate cause of Lois's untimely death.
 ¶ 26. In Hickox, the plaintiffs appealed the judgment of the Circuit Court of the First Judicial District of Harrison County, which sustained a motion for a directed verdict in a medical negligence action and dismissed their legal malpractice action that was brought against the government under the Federal Torts Claims Act. Id. at 628. The Hickoxes argued that the attorney and law firm that represented them caused them "to lose [their] right to pursue a meritorious medical negligence claim against the government" by failing to file their claim before the statute of limitations expired.Id. at 630. The Hickox court found that:
 the plaintiff/client carries this burden by trying the underlying medical malpractice claim as a part of this legal malpractice case, not by trying to prove or recreate what would or may have happened in some other court at some other time and place. More specifically, the "success" component of plaintiffs burden involves no attempt to show what would have happened if the Holleman firm had timely brought the Federal Tort Claims Act case. Rather, the issues that would have been tried there are made up and tried in the legal malpractice suit as the first step in plaintiffs claim here.
Id. at 634 (emphasis added).
 ¶ 27. As stated, in the present case, the Bowie plaintiffs must prove not only that *Page 1211 
they would have been successful in their suit against theMontfort Jones defendants, but that they also would have been awarded two million dollars in damages as a result of the Montfort Jones defendants' negligence. The Bowie plaintiffs failed to demonstrate in their motion for summary judgment that there are no genuine issues of material fact regarding these two issues. Even though the admissions were deemed admitted, no admission (1) stated the standard of care and asked Byrd to admit that standard, (2) asked Byrd to admit that the Montfort Jones defendants deviated from the standard of care and that that deviation was the proximate cause of Lois's death, or (3) separately enumerated the liquidated and unliquidated damages. Therefore, in my view there is a genuine issue of material fact with respect to whether the MontfortJones defendants were negligent, and if so, whether their negligence was the proximate cause of Lois's death. It is only after these questions have been answered in the affirmative that the issue of damages can be addressed. I now turn to a discussion of the admission-of-damages issue.
 ¶ 28. The issue of whether unliquidated damages can be deemed admitted after a failure to respond to requests for admission is an issue of first impression in Mississippi. I have been unable to find a case from this state that directly addresses this specific issue. However, Byrd has provided this Court with two cases from other jurisdictions: Mountain ViewEnterprises, Inc. v. Diversified Systems, 133 Ga.App. 249,211 S.E.2d 186 (1974) and Pratt v. Mattison,1988 WL 87693, 1988 Tenn.App. LEXIS 539, at *11 (Tenn.Ct.App. Aug. 24, 1988).[6]
 ¶ 29. In Mountain View Enterprises, Inc., this very issue was before the Georgia Court of Appeals. The plaintiff appealed the decision of the trial court which denied its request for summary judgment after the defendant failed to timely respond to requests for admission. Mountain ViewEnters., Inc., 211 S.E.2d at 187. The Georgia Court of Appeals reversed the trial judge and ruled that:
 The [trial] court erred in denying the motion for summary judgment. The matter admitted through failure to properly respond to the requests for admissions established a complete claim for the relief sought, except as to the unliquidated damages. See Moore v. Hanson, 224 Ga. 482(1), 162 S.E.2d 429, supra; Bailey v. Bailey, 227 Ga. 55, 178 S.E.2d 864, supra. However, the amount of damages, other than the value of the equipment, is unliquidated and required admission and consideration of evidence by the jury in order to determine these amounts.
Id. at 187 (emphasis added). Thus, the Georgia Court of Appeals made clear that unliquidated damage amounts must be determined by a jury.
 ¶ 30. In Pratt, the plaintiffs appealed the decision of the trial court which declined to award unliquidated damages in the amount of $90,047.49 after the defendant failed to deny certain requests for admission which asked the defendant to admit that he was liable to the plaintiff for unliquidated damages. Pratt, 1988 WL 87693 at *4, 1988 Tenn.App. LEXIS 539 at *Page 1212 
*9. The Pratt court found that the following requests "were not proper subjects for a demand for admissions and were properly disregarded by the [t]rial [c]ourt:"
 The inconvenience suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
 The embarrassment suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
 The humiliation suffered by Mr. Pratt is represented by an amount no less than $10,000.00.
 The mental suffering and stress suffered by Mr. Pratt is represented by an amount no less than $50,000.00.
 To treat his heart attack, Mr. Pratt will incur future medical bills totalling [sic] no less than $36,000.00.
 Id. at *4, 1988 Tenn.App. LEXIS 539 at *9 — 11. The Pratt court also ruled that:
 This Court does not understand that the amount of a plaintiffs unliquidated damages is conclusively established by failure of the defendant to respond to a demand for admission of an arbitrary amount of damages. . . . The fact of the occurrence of such grounds of damage may be so established, and identifiable specific losses or expenses may be so established, but the specific compensation to be awarded for non-monetary or speculative future losses may not be so established.
Id. at *4, 1988 Tenn.App. LEXIS 539 at *11 (emphasis added). The court further held that "[t]he factual assertions of the pleading are admitted, but the amount of unliquidateddamages must be independently determined by the finder offacts." Id. at *4, 1988 Tenn.App. LEXIS 539 at *12 (emphasis added) (citing Miss. T.R. Co. v. Green, 56 Tenn (9 Heisk) 588 (1872)). I find the rulings of the Georgia and Tennessee courts of appeal extremely persuasive.
 ¶ 31. Had Bowie's medical malpractice claim been successful, they would have been entitled to seek damages pursuant to Mississippi's wrongful death statute, Mississippi Code Annotated section 11-7-13 (Rev. 2004). The Mississippi Supreme Court has held that the damages that can be recovered under section 11-7-13 include "the present net cash value of the life expectancy of the decedent; the loss of society and companionship of the decedent; the pain and suffering experienced by the deceased between the time of the injury and the subsequent demise[;] and punitive damages." Jones v.Shaffer, 573 So.2d 740, 743 n. 2 (Miss. 1990) (citingMcGowan v. Estate of Wright, 524 So.2d 308, 311
(Miss. 1988)). Clearly, the total damages that can be awarded include unliquidated damages.
 ¶ 32. I believe, as found by the Georgia and Tennessee courts of appeal, that as a matter of law, unliquidated damages are not a proper subject for admission under our rules of evidence. Therefore, Byrd's default admission of a blanket amount of damages cannot be the sole basis for a damage award that admittedly would include unliquidated damages." `Unliquidated' damages are `damages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury.'" Moeller, 812 So.2d at 959-60 (¶ 18) (quoting Black's Law Dictionary 397 (7th ed. 1999)).
 ¶ 33. In my opinion, the failure to answer a set of requests for admission is akin to the failure to answer a complaint. The Mississippi Supreme Court has made clear that when a defendant fails to answer a complaint that seeks unliquidated damages against him, the plaintiff is not automatically entitled to a judgment in the amount of the damages sought. Capital One *Page 1213 Servs., Inc. v. Rawls, 904 So.2d 1010 (Miss. 2004). In Capital One Services, Inc., our supreme court held that "[a]n on-the-record hearing must be held prior to the entry of default judgment under which unliquidated damages are requested." Id. at 1018 (¶ 26) (citing Journeyv. Long, 585 So.2d 1268, 1272 (Miss. 1991)). Since unliquidated damages are not conclusively established in a default judgment case, I see no reason why they should be conclusively established when a defendant has failed to timely deny requests for admission.
 ¶ 34. As a final point, I note that based on the inscrutable reasoning of the majority, the Bowie plaintiffs are placed in a better position than they would have been had Byrd not negligently caused their case to be dismissed. Without a doubt, had their medical malpractice case not been dismissed because of Byrd's failures, they would have had to prove that the Montfort Jones defendants were negligent and that that negligence caused Lois's untimely death. Without such proof, they would not have been allowed to have the issue of damages considered by the fact-finder. Therefore, for the reasons stated, I dissent.
LEE, P.J. AND CHANDLER, J., JOIN THIS SEPARATE WRITTEN OPINION.
[2] Isaac K. Byrd, Jr., Katrina M. Gibbs, and Byrd, Gibbs Martin, PLLC, f/k/a Byrd Associates were the defendants in the circuit court and are the appellants here. Unless otherwise indicated, I refer to them collectively as "Byrd." Charles Brown and Willie J. Bowie were the plaintiffs in the circuit court and are the appellees here. I refer to them collectively as "Bowie," although for the sake of clarity they may sometimes be referred to separately or jointly by their individual names.
[3] Willie and Charles are Lois's sole wrongful death beneficiaries.
[4] The two million dollar figure that was listed in the requests for admission, and accepted by the court as the basis for the summary judgment damage award, was taken from a submission made by Byrd in bankruptcy court proceedings involving their legal malpractice insurance carrier.
[5] In Moeller v. American Guarantee LiabilityInsurance Co., 812 So.2d 953, 960 (¶ 22) (Miss. 2002) (quoting Simpson v. State Farm Fire Cas. Co.,564 So.2d 1374, 1376 (Miss. 1990)), the Mississippi Supreme Court held that "[w]hatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts."
[6] I note that Pratt v. Mattison is an unpublished Tennessee Court of Appeals opinion, and I recognize that Rule 35-B(b) of the Rules of Appellate Procedure prohibits parties from citing unpublished opinions to this Court. However, I do not interpret Rule 35-B(b) as prohibiting attorneys from citing unpublished opinions from other jurisdictions. Moreover, I do not interpret Rule 35-B(b) as preventing this Court from considering unpublished opinions from other jurisdictions.